OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

# JUNE TERM 1890.

## WHEELING.

CUMMINGS *v.* ARMSTRONG, JUDGE.

Submitted January 17, 1890.—Decided June 16, 1890.

MANDAMUS—BILL OF EXCEPTIONS—JUDGES.

A judge will not be compelled by *mandamus* to sign a particular bill of exceptions, when he alleges in his answer to a rule from this Court, that such bill does not truly state the facts. The judge has sole power of determining whether such bill is true or not. His return to the writ is conclusive on this point and can not be traversed. It is necessary however, that he should settle and sign a proper bill, which, he must certify, does contain the facts and the truth.

*I. H. Lynch* for petitioner.

*H. C. Flesher* for respondent.

LUCAS, JUDGE :

The petitioner, Samuel E. Cummings, presented his petition to one of the judges of this Court, praying that a

rule be awarded against V. S. Armstrong, judge of the sixth judicial circuit of this State, requiring him to show cause why a *mandamus* should not issue against him to compel him to sign two certain bills of exceptions, which are set out in the petition.   The petitioner was tried for murder in the Circuit Court of Roane county at the August term, 1889, and convicted of murder in the first degree, and the punishment of confinement in the penitentiary awarded by the jury; and it was on this trial that the said bills of exceptions were prepared and presented to the court for signature and seal, but the court refused to certify them.   The answer of Judge Armstrong was filed in the clerk's office of this Court on the 29th day of October, 1889, and at the hearing the relator filed his "demurrer and special replication."

The first bill of exceptions relates to certain testimony, which, the petitioner states, he offered on the trial, but which the court excluded.   The second bill of exceptions sets out in detail the facts proved on the trial, and the notes taken by the short-hand reporter, who had been employed and duly sworn in accordance with the act "authorizing judges of Circuit Courts to employ short-hand reporters," as found in Code 1887, p. 1023.   The question before this Court now to be considered is whether the rule should be discharged, or a *mandamus nisi* be awarded.

The petitioner, it will be observed, has treated the answer to the rule, as if it were an answer or return to a *mandamus nisi* and has demurred and filed a special replication. Whether this was proper pleading or not, it is unnecessary to inquire, as the respondent has not complained of it, and the petitioner is not in a situation to do so, as it is his own pleading.  His demurrer, therefore, must be taken to admit the truth of the facts stated in the answer.

In the answer the respondent states as to the first bill of exceptions, that no such evidence was offered by the petitioner at the time, and none such rejected by the court. This on demurrer disposes at once of the first bill of exceptions.

As to the second bill the respondent admits, that he refused to sign the bill prepared and presented by the peti-

tioner's counsel, for the reason that it did not truly state the facts proved. And as for the notes of the short-hand reporter the respondent proceeds to say: " Respondent further answering says, that upon the trial of said petitioner respondent upon information, that he deemed reliable, derived from counsel in said case, as to the competency of C. R. Ball as a short-hand reporter, did appoint said Ball, who was duly sworn to take full short-hand notes of the evidence adduced upon the trial of said petitioner; that during the progress of said trial it was found and ascertained that said reporter was wholly incompetent to report the evidence therein, and the counsel for the State and for petitioner did not rely upon said reporter's notes of the evidence, but that counsel for the State and petitioner took extensive notes of the evidence adduced on said trial." The answer of the respondent concludes as follows : " Respondent says that the facts purporting to be contained in said petitioner's Exhibits B and C respectively do not contain all the material facts proved upon the trial of said cause, but that petitioner's Exhibit D, from pages 22 to 44, inclusive, does contain all the material facts proved upon the trial of said petitioner."

If this statement be true, and it must be so taken on demurrer, it effectually disposes of the second bill of exceptions, as the respondent could not properly sign a bill, which required him to certify that it contained all the material facts proved, when such was not the case ; and when he certified a bill of exceptions containing all the facts proved, as the answer states and the demurrer admits, nothing more could or can be required of him. But, in addition to his demurrer the petitioner files a special replication, in which he denies the material averments of the answer. Under the law, as repeatedly decided by this Court, such a replication must be disregarded. In *Douglass* v. *Loomis,* 5 W. Va. 542, it is said: "A judge will not be compelled by *mandamus* to sign a bill of exceptions when he alleges in his return to the conditional writ that the bill does not truly state the facts. The judges have sole power of determining whether the bill is true or not; their return to the writ being conclusive of the case, and not liable to

be passed upon by a jury. The remedy in such case, if any, would seem to be, if a false return be made, an action on the case for damages." To the same effect, see *Poteet* v. *Commissioners*, 30 W. Va. 58 (3 S. E. Rep. 97) and *Morgan* v. *Fleming*, 24 W. Va. 189.

But it has been urged by counsel with a good deal of power and ingenuity, that the demurrer to the answer should be sustained, because a demurrer admits as true only such matters of fact as are well pleaded or sufficiently pleaded, and that in this case the respondent could not aver in his return that the notes of the short-hand reporter do not contain all the material facts proved in evidence. The respondent, it is argued, is estopped to make such an averment by virtue of the statute, which uses the following language : "(3) Any short-hand reporter so appointed shall be competent in the practice of his art, and shall be duly qualified under oath. It shall be his duty to take full short-hand notes of the testimony in any case, in which his services may be required, and such notes shall be deemed and held to be official and the best authority in any matter of dispute ; and a copy of the same, made as hereinafter provided, shall be used by the parties to the cause in any further proceedings wherein the use of the same may be required." Acts 1887, c. 20, § 3; Code 1887, p. 1023.

It is urged not only that this defective averment renders the answer bad on demurrer, but that the relator may reply specially, denying the said averments of the answer, and such replication being proved by the record is conclusive. If the respondent had suppressed the reporter's notes, we should be called upon to interpret the above statute, and to declare its force and effect in determining what were the facts proved in any given case. But in this case the respondent signed a bill of exceptions stating that the evidence was taken down by the short-hand reporter, who had been duly qualified under oath to take full short-hand notes of the evidence ; and in a separate order entered on the order-book, and certified to this Court by the clerk, it is stated: "The court deeming it important and necessary to employ a short-hand reporter to report the

proceedings had and testimony given in the trial of this cause, appointed C. R. Ball as such reporter; and, the said Ball having performed said services under said appointment" etc.   Not only was this order entered, but a copy of the reporter's notes, identified by the clerk and certified by the said reporter, is sent up here as a part of the record.   The rule on this subject is correctly stated in *State* v. *Vest*, 21 W. Va. 800 : "Whatever, therefore, on the face of a book of record, has been duly authenticated by the . signature of the judge, must be held to be an absolute verity, and it can not be contradicted ; and so, also, any paper actually referred to on the record-book (order-book) as filed, or as constituting a part of the record, is to be regarded as a part of the record, and is as much a verity as if it had been spread out at length as a part of the record."

The object of a *mandamus*, in such cases as this, is " to perfect the record for appeal."   If, therefore, these notes are official, and the best authority, even as against the certificate of the court itself, as is claimed by petitioner's counsel, the petitioner already has them on the record, as much so as if they were embodied in a separate bill of exceptions ; and, on the trial of his writ of error, should one issue, he will have opportunity to derive every advantage from these notes which the statute contemplates. In reference to them, the petitioner has been deprived of no right by the action or non-action of the respondent; nor do we think that this Court ought to require respondent to certify that these notes contain all the evidence, if he can not conscientiously do so.   If they are to have the force and conclusiveness claimed for them, the certificate of the judge in their favor could add nothing to their value; neither could his counter-certificate detract from their weight or conclusiveness as evidence.   As to the true interpretation of the section of the statute of 1887 already quoted, that is a question which ought not to be decided until it properly arises on writ of error in the case, should one be granted, or in some similar case on an appeal or writ of error.

Having thus reached the conclusion, that the record was already perfect, and that the *mandamus* should not in any event issue, I had thought that the question of the true

construction of the act of 1887, and the effect, value, weight or conclusiveness of the reporter's notes were not involved, or did not properly arise on the face of the record in the sense intended by the constitution. The majority of the Court are, however, of a different opinion. Yielding cheerfully to the opinion of the other members of the Court, I have examined the act (chapter 20, Acts 1887) with considerable care, and rest with confidence in the conclusion reached as to the proper construction of that law. Our act was taken almost literally from the act of the general assembly of Pennsylvania passed May 15, 1874. See P. L. Pa. 1874, p. 182. I deem the question of sufficient importance to justify me in inserting here this act of Pennsylvania, from which ours is substantially taken :

" Section 1. The judges of each of the several courts of this commonwealth are hereby authorized, in their discretion to appoint a stenographer to be attached to the court, who shall hold his position during the pleasure of the court. Sec. 2. The stenographer so appointed shall be competent in the practice of his art, and shall duly qualify under oath. It shall be the duty of said stenographer to take full stenographic notes of the testimony in all proceedings in any trial of facts, together with the charge of the judge, and said notes shall be deemed and held to be official, and the best authority, in any matter of dispute ; and a copy of the same, made as hereinafter provided, shall be used by the parties to the cause in any further proceedings, wherever the use of the same may be required." The third section provides compensation for the stenographer, and the fourth proceeds as follows :."That it shall be the duty of said stenographer to furnish a copy of the notes of testimony, written out in long-hand, upon the request of the judge, without further charge ; provided, that, in case either party to the action shall request or require a transcript of the said notes, the said stenographer shall furnish the same, and shall be entitled to be paid therefor the sum of fifty (50) cents for each one hundred words so transcribed."

It will be seen that the second section of the Pennsylvania act is almost identical with our third section, except that our law-makers have substituted the word " short-

hand" for "stenographic." There are technically two modes of writing in short-hand—one called "stenography," and the other, the more modern method, called "phonography." From the Greek derivation, however, of the term "stenography," we perceive that it means to write in narrow compass, and hence the word "stenography" may well serve to express the generic term for short-hand writing; and its use in this sense is sanctioned by custom and the authority of Webster and other standard lexicographers. It is so used in the Pennsylvania law, and our legislators might well have retained it, as synonymous with "short-hand," without any danger of misinterpretation.

It will be perceived that the first section of the Pennsylnia act contemplates a general appointment of a stenographer, to hold the position during the pleasure of the court, whereas our act authorizes a special appointment, "to report, under such regulations as the judges may prescribe, the proceedings had and testimony given during the trial of any cause in said Circuit Courts." Under our act, therefore, it would seem proper that the order of the judge or court making the appointment should specify the cause or causes, in which the duty of reporting is to be performed, or that the record of each cause, in which a reporter is employed, should show that his appointment covered that cause. But, whether the appointment is for one or several cases, there can be no doubt that the stenographer becomes an officer of the court like the clerk, because his notes of the testimony are to "be deemed and held to be official and the best authority in any matter of dispute."

It is a well-settled rule of law, that, when one State adopts a statute of another State, it adopts at the same time the judicial construction of the statute of the State, from which it is taken up to the time of its adoption. At the time of the passage of our statute, the supreme court of Pennsylvania had construed their act; and such construction under the rule of law just cited we may regard as having been adopted as the law of this State. In the case of *Taylor* v. *Preston,* 79 Pa. St. 436, it was held: "Under the act of May 15, 1874, a stenographer's notes are to be those made up under the view, subject to the direction, of the

court, and with their approval.     The stenographer's notes have the effect of the prothonotary's certificate of the record of a cause, and are subject to be modified in accordance with what may be judicially found to be the fact." In the body of the opinion these points of the syllabus are amplified as follows:

"Some confusion as to the exact character of the evidence produced has been introduced into the cause by an alleged inaccuracy on the part of the stenographer in reporting the ruling of the court when the evidence was offered.   Preston, the plaintiff, was on the stand, and, having been asked to state the consideration of his contract with the defendants, objection was made to the question on the ground that the contract was in writing.   It does not appear from the notes that the point raised was decided at all.   Application was subsequently made to the court for the correction of the record of the testimony.   This was refused because the law had made these notes the best evidence in cases of dispute.   The judge who tried the cause has certified, however, that the court decided to admit the evidence, saying, in substance, that it was competent to show the consideration by parol, and that 'the evidence was not offered or received for the purpose of proving a parol promise to pay the purchase-money due.'   While this misunderstanding may have no evil influence in this particular case, it may be remarked, in passing, that its occurrence indicates the possibility of mischief that may flow from too liberal a construction of the act of the 15th of May, 1874.   In providing by the second section that 'the stenographic notes of the testimony in all proceedings in any trial of the facts, together with the charge of the judge, shall be deemed and held to be official, and the best authority, in any matter of dispute,' the legislature did not design to subordinate the power of the judge to the power of the stenographer.   The administration of the law has been committed to the courts by the constitution; and the same constitution has provided that judges, and not clerks, shall compose those courts.   Responsibility for the conduct of legal business must rest where it has been constitutionally lodged.   The legislature would have no power, as

they could have had no intention, to impose upon the clerk, who records the details of the trial, the duties of the judge, who tries the cause. The stenographic notes that are to be 'the best authority in any matter of dispute' are the notes made up under the eye and direction, and with the approval, of the court. They have then the effect of the prothonotary's certificate of the record of a cause, and are subject to be modified and moulded in accordance with what may be judicially found to be the fact, precisely as its records are always subject to the court's control."

This decision establishes beyond controversy that the notes of the stenographer are a part of the record of the case in which he is appointed, but are to be made and transcribed under direction of the court, and subject to its correction precisely as other portions of the record.

It will further be observed, that the point in controversy in this case was not as to the testimony of a witness but as to a ruling of the court. Nevertheless the supreme court of Pennsylvania construed section 2 of the Pennsylvania act, where it uses the word "testimony," as including the ruling of the court below upon an exception to an interrogatory. We are bound to infer, therefore, that the stenographer's "notes of the testimony" included the exceptions to evidence and rulings thereon, and that such notes are throughout to be submitted to and made up under the eye and direction and with the approval of the court. But the case does not stop here. It goes further, and gives an authoritative exposition of the meaning to be attached to the word "official." These notes made up, as above required, under the eye and with the approval of the court, become a part of the record, "with the effect of the prothonotary's certificate of the record of a cause." Under the law of Pennsylvania, the certificate of the prothonotary to the record of a cause has the same effect as, in our state, the certificate of the clerk of the Circuit Court. It imports absolute verity until corrected by *certiorari* or other legal method. Therefore, whenever the "testimony" comes in question, including reservations of exceptions thereto and rulings thereon, the notes of the stenographer, made up under the eye of the court, as aforesaid, are the best

authority in any matter of dispute; and a copy thereof may be used with like effect by the parties to the cause, in any further proceedings wherein the use of the same may be required. This phrase "further proceedings" includes, of course, proceedings on appeal or writ of error.

Upon this question we are not left to conjecture, as I shall now proceed to show. The Pennsylvania act was amended and enlarged by an amendatory statute passed on the 8th day of May, 1876. I deem it more satisfactory to give this statute in full, in order that our own legislation upon this subject may be fully understood:

"*Stenographers.* Section 1. The president or law judges of each of the several courts of this commonwealth are hereby authorized, in their discretion, to appoint a stenographer or stenographers to be attached to the courts, who shall hold his position during the pleasure of the court. Sec. 2. The stenographer so appointed shall be competent in the practice of his art, and shall duly qualify under oath. It shall be the duty of said stenographer to take full stenographic notes of the testimony in all proceedings in any trial of facts, together with the charge of the judge, and said notes shall be deemed and held to be official, and the best authority, in any matter of dispute; and a copy of the same, made as hereinafter provided, shall be used by the parties to a cause in any further proceeding, wherever the use of the same may be required. Sec. 3. The said stenographer shall be paid a compensation at the rate of ten dollars a day for every day actually spent by him in said courts in the taking of notes, and be allowed and furnished all the necessary stationary for the performance of his duties, said compensation to be paid by the state in the case of the supreme court stenographer, and by the county or counties forming the judicial district in case of stenographers appointed in said districts upon the order of the judge presiding: provided, that in no county of this commonwealth having less than two hundred thousand inhabitants shall such short-hand clerk receive a greater compensation than twelve hundred dollars per annum. Sec. 4. It shall be the duty of said stenographer to furnish a copy of his notes of testimony written out in long-hand, upon the order of the

court or the request of counsel in the case, during the progress of a trial or at any subsequent time; also, within a reasonable time after trial, to transcribe all notes not previously transcribed by order of the court, which transcripts shall be filed and made a part of the records of the case : provided, that the stenographer may be excused, in the discretion of the court, with the consent of counsel, from the aforesaid duty of transcribing notes and furnishing transcripts, in which case it shall be said stenographer's duty to preserve the notes taken by him for future reference or transcription, if desired. The transcripts thus made shall be furnished at a compensation not exceeding fifteen cents per each one hundred words, such compensation to be paid by the county in which the notes are taken when the transcript is ordered by the court, or when made for the purpose of being filed, and by the counsel in the respective cases when ordered by them. Sec. 5. In any county of this commonwealth the presiding judge shall appoint a stenographer upon the written request of two-thirds of the members of the bar in actual practice in such county." "It shall be the duty of the stenographers in each county, on the trial of all civil cases, to take down, as part of his report of the judge's charge, every ruling, order, and remark of the judge relating to the case upon trial, made in the presence of the jury, in any state of the proceedings, to which either party may except, in the same manner and in the same effect as is now practiced in relation to the judge's charge." Laws 1881, p. 107.

The Pennsylvania law, as thus amended, received further construction in 1879, several years before the adoption of our statute. In the cases of *Chase* v. *Vandegrift* and *Oil Co.* v. *O'Hare*, 88 Pa. St. 217, the supreme court of Pennsylvania rendered a decision and opinion which, looking to the opinion heretofore announced, I think of sufficient importance to give in full. The judgment of the supreme court was entered January 6, 1879 :

"PER CURIAM. A question is raised in these cases whether the stenographer's note of a bill of exceptions to the admission or rejection of evidence is sufficient, or is it essential the bill should be actually sealed by the judge ? A careful

examination of the act of 8th of May, 1876 (P. L. 140) leads to the belief the note is sufficient. That act is a substitute for the act of 15th May, 1874, and goes somewhat beyond it. The first section provides for the appointment by the president or law judge of a stenographer to be attached to the court. The second requires him to be competent in his art, and to duly qualify under oath. It then proceeds : ' It shall be the duty of said stenographer to take full stenographic notes of the testimony in all proceedings on any trial of facts, together with the charge of the judge, and said notes shall be deemed and held to be official, and the best authority, in any matter of dispute ; and a copy of the same, made as hereinafter provided, shall be used by the parties to a cause in any further proceeding, wherever the use of the same may be required.' Thus the stenographer is an officer of the court and acts under oath ; and his notes are declared to be official, and to be the best authority, in case of dispute. Besides, they are to be used whenever their use is required, covering the use thereof in this court. This is not all, for the fourth section, after making it the duty of the stenographer to furnish copies of his notes in long-hand upon the order of court or request of counsel, during the trial or afterwards, provides that, within a reasonable time after the trial, he shall transcribe all notes not previously transcribed by order of the court, which transcript shall be filed, and made part of the records of the case. Now, with these provisions before us, intended to preserve and reproduce the evidence in the most accurate form, to be done by a sworn officer, and deemed to be official, and the best authority, and filed as a part of the record, it can not be held that the note of an exception taken, and by whom, is not to be regarded as a part of the record, and is valueless, because it is not sealed by the judge. One of the purposes of the appointment of a stenographer is to secure rapid and unabating progress in the trial, relieving court and counsel from taking full notes. If a judge forgets an exception taken, is his want of recollection to deprive a party of the benefit of the notes of the stenographer because the judge declines to sign the bill? Clearly the act intended that the officer should perform a duty which

would supersede the necessity of personal attention to these details by the court. It seems to us the act must receive this construction from its very terms, as well as its intent and purpose. But, on the merits, we are of opinion no error appears in the record, and the judgment is therefore affirmed in each case."

I do not perceive that the mandatory act of 1876 materially changed the original act of 1874, from which ours is taken. The former does indeed declare, that the transcription in long-hand, made by the stenographer, shall be "a part of the record of the case;" but the court of appeals had already decided, in reference to the act of 1874, that "the stenographer's notes had the effect of the prothonotary's certificate of the record of a cause." In *Edmiston v. Schwartz,* 13 Serg. & R. 135, the effect of such a certificate of the prothonotary was defined by GIBSON, J., as follows: "Every court is the best judge of its own record, and its officer the (prothonotary,) acting by its direction, is presumed to verify nothing but the truth." A record imports absolute verity, and can not be contradicted by evidence, though the witness be of the best credit. 1 Rolle Abr. 757; 3 Bl. Comm. 331. Therefore, according to these Pennsylvania decisions, which we adopted when we adopted their act, when the court requires the stenographer to transcribe his notes in long-hand for the use of the court, and under its direction, and certifies them to be correct, and this fact appears of record, as well as his appointment and qualification, it follows that the transcribed notes of the testimony, including exceptions to rulings of the court during the examination, do become a part of the record of the cause, and need not be embodied or incorporated in any other bill of exceptions, nor require other verification than identification by the clerk, and certification by the reporter himself.

It must be remembered, however, that the stenographic report to be entitled to this official character must be made up under the view, "subject to the direction, of the court, and with its approval." In cases where the testimony is required to be passed upon by the appellate court, as on motions to exclude all the evidence of a party, or on de-

murrer to evidence, or on the relevancy or propriety of an instruction, where it is claimed there is no evidence to support its hypothesis, or where it is necessary to inspect the evidence to ascertain what was decided in former adjudications, in all these cases the notes of the stenographer, under the conditions above prescribed, are a part of the record, and are the best authority, incapable of contradiction by evidence *aliunde.* It is important to remember, however, that, on motions for new trials, our practice is for the court to certify, not the evidence, but the facts proved. I perceive nothing whatever in the act of 1887 which could be construed as intended to change this rule of practice. See rules of court, 23 W. Va., 818. There is but one case in which, on overruling such a motion, the lower court can be required to certify the evidence; and that is where the testimony is so voluminous, and so contradictory or conflicting, that the court can not certify the facts proved. In such cases, it becomes its duty to certify the evidence; otherwise a party would be deprived of his appeal. *Powell* v. *Terry's Adm'r,* 77 Va. 250; *Dillard* v. *Dunlap,* 3 S. E. Rep. 383. In such case the stenographer's report, transcribed and certified as aforesaid, is sent up instead of the facts proved, and imports absolute verity as to what the parol testimony before the jury actually was. In all other cases it is the duty of the judge, who presides, upon overruling a motion for a new trial, if required so to do by counsel, to certify the facts proved; and in cases where he has appointed a stenographer, and has directed his notes to be transcribed, he should require counsel to digest the same, and to make up therefrom a statement of the facts proved, and, if they can not agree, he should settle their "dispute" by recurring to the notes as "the best authority." He should not, where he can conscientiously avoid it, cast upon the appellate court a duty, which in our State properly devolves upon himself; nor should he in criminal cases without weighty reasons burden the public with the expense of printing the stenographer's notes in cases, where the evidence is not required, or where ordinary diligence would have afforded a clear and comprehensive digest of the facts proved. In several of the States, where

similar laws have been enacted, they have required the transcribed notes to be put in narrative form. This reduces the report to narrower compass, and I can conceive of no objection to its being done in our State, where the court so directs. In the case now before us the transcription seems to have been so made.

But the very anomalous and extraordinary feature in the present case is that the presiding judge has certified that the reporter appointed by himself on recommendation of counsel turned out to be not "competent in the practice of his art," as he is required to be by the statute. In this anomalous state of affairs I am of opinion, that, as soon as the fact was judicially discovered, the court should have either discharged the official reporter or permitted him to proceed only by consent of the prisoner, so signified as by criminal practice required. The requirement of the law is, that the reporter shall be competent in his art. None other can be legally appointed. When the court discovered that its appointment was in violation of the statute, it should have removed the appointee or declined to request a transcription of his notes; and if counsel made such a request the court should have superintended the transcription in such manner as to see that it was properly made, "in accordance with what may be judicially found to be the fact."

I am free to say that I do not see what authority the court has to employ an incompetent stenographer, or to permit such a reporter to proceed with his notes after counsel admit his incompetency, and on that account engage in taking notes themselves, with a view of impeaching his accuracy, or supplementing his notes by their own. The very object of the law, as decided by the Pennsylvania court, is to supersede the necessity of taking notes by the court and counsel; and, if the notes of counsel are to be taken as better authority than those of the short-hand reporter, the whole object and letter of the law are frustrated. I can not perceive, therefore, that there is anything to be done, when the reporter turns out to be notoriously incompetent, but to discharge him and appoint another, or proceed as if no appointment had been made. If any other course is to be pursued, it must be done in such manner as to em-

brace an express waiver of all objections by all the parties interested. The rule must be discharged.

BRANNON, JUDGE:

I concur in the result reached in the opinion of Judge LUCAS in refusing the writ of *mandamus,* but do not concur in all the views presented in that opinion. I shall not elaborate my views as to the statute of this State providing for stenographic reports of trials, but shall content myself with stating that I do not think, the legislature intended that such report of evidence should be a part of the record properly so called. I think such report is designed for use only in the trial-court, and that its matter does not become a part of the record unless made so by bill of exceptions, according to the practice as to making up bills of exceptions as established by decisions in Virginia and this State.. The fact, that such report is part of the record in Pennsylvania, does not require us to so consider it—*First,* because the mode of preparation of a record for the purposes of error in an appellate court in Pennsylvania does not prevail here ; and, *second,* the Pennsylvania statute expressly makes the report a part of the record, whereas our statute, though it may have been drawn from that statute, omits this material provision. The foregoing opinion is too liberal, in giving that statute a wider scope and effect than I think a proper construction of it would give. I am authorized by Judge SNYDER to say that he concurs in this note.

RULE DISCHARGED.