# CHARLESTON.

## HUGHES *et al. v.* FRUM.

Submitted September 10, 1895—Decided December 4, 1895.

1. ARREST OF JUDGMENT.

    A motion in arrest of judgment must be based only on matter apparent in the record.

2. ASSIGNEE—RECOVERY BY ASSIGNEE—MONEY HAD AND RECEIVED.

    Recovery may be had by an assignee against an assignor of non-negotiable paper on the common count for money had and received, in *indebitatus assumpsit* Overruling that feature in point 2 of the syllabus of *Nicholas* v. *Porter*, 2 W. Va. 13.

3. ASSUMPSIT—MONEY HAD AND RECEIVED.

    The action of *assumpsit*, under the count for money had and received, is an equitable action, and applicable to almost every case where money has been received by one, which, in justice and conscience, ought to be refunded.

4. STATUTE OF FRAUDS—TIME OF PERFORMANCE.

    A contract capable of performance, and which may be required to be performed within one year, does not fall under that clause of the statute of frauds (clause 7, chapter 98, Code) requiring an agreement that is not to be performed within a year to be in writing.

5. STATUTE OF FRAUDS—DEBT OF ANOTHER.

    A promise to pay the debt of another must be in writing.

6. VERDICT—MOTION' TO SET ASIDE.

> A motion to set aside a verdict must specify grounds. Where the record states that it is because improper evidence was admitted, it is too general.

7. INSTRUCTIONS—BILL OF EXCEPTIONS—ERROR.

> Error based on the giving or refusal of instructions ought to be shown by bill of exceptions giving the instructions and enough of the evidence to show whether they were proper; but where the record otherwise identifies the instruction, and shows an exception, and the whole evidence appears, that will suffice, without such bill of exceptions.

8. RECORD—EXHIBITS.

> Where a record or other writing makes such reference to another writing by number, or other carmark, so that it may be safely identified, that makes such writing a part of the record or writing referring to it.

9. ASSIGNEE—RECOVERY BY ASSIGNEE.—RECOURSE.

> An assignee, by way of recourse, may recover against his immediate or any remote assignor of non-negotiable paper, under chapter 99, section 15, Code.

M. M. THOMPSON and J. PHILIP CLIFFORD for plaintiff in error, cited Code, c. 98; 39 W. Va. 659; 40 W. Va. 484.

JOHN BASSEL and L. C. LAWSON for defendant in error.

BRANNON, JUDGE:

Hughes and wife recovered judgment in Harrison Circuit Court against Frum, and Frum obtained this writ of error.

*First.* The first assignment of error is in overruling a motion in arrest of judgment on the verdict, the motion being based on the theory that the basis of recovery being upon the verbal assignment of a promissory note, and there being no special count in the declaration alleging the assignment and the insolvency of the maker of the note—those facts being stated only in the bill of particulars—there could be no recovery. I fail to see how this matter could arise on a motion in arrest of judgment. That motion is based on the principle that for reason of law apparent on the record, a judgment can not be given; but in this case was a declaration with only the usual common counts in *indebitatus assumpsit;* and the bill of particulars containing the only hint of this assignment, being no part of the decla-

ration, and the ground of recovery appearing only from the evidence, we can not say that the defect or fact precluding judgment appears by record. This matter would arise, however, on the motion to set aside the verdict on the theory of variance between pleading and evidence; that is, that the evidence showed a case not recoverable upon under the declaration—in other words, that there was no pleading justifying a recovery upon the case as developed by the evidence. But the point is not well taken, in any view. There being a count for money had and received, there can be a recovery based on the assignment of a chose in action turning out insolvent, whether there was an express or an implied undertaking to stand good for it in case of failure to collect, since it is a case where money has been paid on a consideration failing; and the law says it shall be refunded, and is thus a case of money had and received by one person, which should be repaid, and is therefore, in legal contemplation, received for the use of the party who paid it, and is recoverable under the count for money had and received. Tucker's opinion, *Drane* v. *Scholfield*, 6 Leigh, 395; opinions in *Mackie* v. *Davis*, 2 Wash. (Va.) 281; Roane, J., in *McWilliams* v. *Smith*, 1 Call, 125. The case just cited from 1 Call is pointedly decisive of the question logically.

I know that in *Nichols* v. *Porter*, 2 W. Va. 13, the syllabus makes the court hold that there can not be a recovery on the common counts, but there must be a special count, setting out the assignment and failure to collect, *etc.*; but the opinion does not seem to decide so, and we must say that clause in the syllabus is neither on the nature of the case, nor on authority, sustainable. It is a case of money paid on a consideration failing, which either express promise, or a promise which the law raises, requires to be refunded, and, under all authorities touching the count for money had and received in *indebitatus assumpsit*, is recoverable under that count. *Jackson* v. *Hough*, 38 W. Va. 236 (18 S. E. 575); 2 Greenl. Ev. § 117.

If it be said that the common count is so general that it gives no notice of the real character of the claim, and thus works a surprise on the defendant, I reply that section 11, chapter 125, Code, requires a bill of particulars, and in its absence no proof will be allowed.

*Second.* The second assignment of error is the refusal of the court to set aside the verdict because contrary to law and evidence. Here comes up the question of the defendant's liability on the merits. The theory—the main if not the only one—of the plaintiff, for recovery, is that Frum assigned Miss Hughes (later Mrs. McDonald) a note which proved worthless. Did he assign it? Frum was guardian of Miss Hughes. He told her that when she should become of age he wanted to settle up with her, as her guardian, and, if she would sign a receipt to enable him to settle with a commissioner, he would still be responsible to her for her money; and when she became of age she executed such receipt of satisfaction of Frum's obligation as guardian, and he gave her his note for the money, as she preferred him to keep the money. Frum had lent part of his ward's money to Gauthrop, part to Willis. He informed her of this. When Frum's note to her matured, Frum wanted to pay it, but she did not wish the money; and he, desiring to relieve himself of his debt to her, informed her that Willis held a certain land note on Nixon, and asked her how she would like to buy it, or suggested that she buy it of Willis in discharge of the money he had borrowed of Frum as her guardian; expressing to her his definite opinion that the Nixon note was good, and that Willis was good. She agreed to take the Nixon note as so much paid on his note, and a time was named for her and Willis to meet at Frum's to exchange notes; but, as she was then to be absent on a visit, she sent her brother to attend to the business. Willis attended, and so did Gauthrop; the two debtors being there showing that it was intended by Frum to settle his note held by his late ward. Gauthrop gave his note to Miss Hughes for the money of hers which he had borrowed of Frum, Willis and Frum becoming sureties in it. It had been intended to end Willis' liability for the money he had borrowed of Frum as guardian, for which he had executed his note to Frum, by the assignment by Willis to Miss Hughes of the Nixon note; but, as Willis had not the note there, he executed to Miss Hughes his note, with Gauthrop and Frum as sureties; Willis agreeing with Frum to get the Nixon note, and with it lift the note just mentioned.

Frum's note originally given to Miss Hughes was delivered up. The two notes of Gauthrop and Willis were delivered to Miss Hughes.

Clearly, the acceptance of these new notes, with new parties, in payment of the note which Frum had given Miss Hughes, and the surrender of that note, ended the debt which had theretofore existed, owing from Frum to her. *Bank v. Good,* 21 W. Va. 455. The circumstances, too, show that the parties treated it as payment. Later, Willis, with Miss Hughes' consent, lifted the note which he, with Gauthrop and Frum as sureties, had given her, by the assignment and delivery to her of the Nixon note. Willis indorsed his name on this Nixon note, and delivered it to Frum for Miss Hughes. She was not present, but the matter had been presented to her, and she had consented to take the Nixon note in payment of the note of Willis, Gauthrop, and Frum to her, and she intrusted Frum with this Willis note, to exchange it for the Nixon note. Frum acted for her, certainly, in the character of friend and agent. The lady herself says that Frum left it to her to do as she pleased about taking this Nixon note.

Now, how does this state of facts make Frum an assignor of the Nixon note? He never sold or agreed to sell or assign it, as he did not own any interest in it; but Willis, who alone did own it, agreed to assign and did assign it. Never a word did Frum utter as a word of sale or assignment of this Nixon note. He had told Miss Hughes that he had lent her money to Willis, and that Willis would assign this note to her in discharge of Willis' note to her— for Frum's obligation to her had already been discharged by Willis' note, and in it Frum was only surety; and, when he signed it as surety, it was with the understanding that Willis would produce the Nixon note, and with it lift this note.

An assignment of a debt need not be in any particular form or words, and may be oral or written. *Bentley* v. *Ins. Co.,* 40 W. Va. 729 (23 S. E. 584). But there must be some act importing a particular intent to sell and assign; the party must intend to dispose of the debt, as an act of sale, called "assignment," and to become bound as assignor. It

is a sale of the debt, and he must intend to assume the place of its seller. There must be a sale, called an "assignment." Frum, it is true, acted as the agent of Miss Hughes, and advised her to take the Nixon note, and expressed the confident opinion of the solvency of the Nixon note and of Willis; but all that does not make him its assignor. The plaintiff's evidence wholly fails to show an assignment. As the Nixon note had some five years to run when Miss Hughes was considering whether she would take it, and stated that she might marry, and need the money, before the note became due, Frum did promise her that if such should be the case, he would take the Nixon note—that is, buy it of her; but that would not make him an assignor of the note. If his promise was, in effect, in the event of her marriage, to pay the note, that would be a promise to pay the debt of another, and require a writing, but would not be an assignment of that debt. If it was a promise in such event to pay and take an assignment of that debt, it would be that promise—a promise of purchase, not an assignment of the note. If such promise could be considered as based on sufficient consideration, and she had, on marriage, elected to enforce it, it might be enforced, and would not fall under that clause of the statute of frauds that no promise not to be performed within a year shall bind, unless in writing, because Miss Hughes might have married, and called on Frum to execute the promise, within the year. *Kimmons* v. *Oldham*, 27 W. Va. 258. But there is no count on this promise, and it can in no view be treated here as a justification of the verdict. I repeat, that undertaking is one of different cast from an assignment of the Nixon note.

Nor can the fact that Frum expressed the opinion that the Nixon note was good be regarded as an assignment of it. If a representation known by him to be false, intended to deceive, it might be actionable on the distinctive ground of fraud or deceit, but there is no allegation or feature of the declaration covering that ground of action. *Wamsley* v. *Currence*, 25 W. Va. 543. The case seems to show that the Nixon note was then good, both because Nixon was good, and the land adequate security, and that Willis was

good, and that Frum might fairly and truthfully, as things then were, make such statements, but that owing to the lamentable decline of land, as shown by the evidence, under the effect of panic and depression, a prior lien consumed the land, and Willis became insolvent. These are circumstances to be regretted, in sympathy for Mrs. McDonald; but they do not call on us to impose a liability on Frum, arising upon the idea of assignment. The record presents no ground, under law or evidence, to charge Frum as assignor, or justify the verdict, and it ought to have been set aside by the circuit court for that reason. We hesitate to set aside verdicts on questions of fact, but this verdict seems rather a mistake or misapplication of law by the jury, on the facts shown.

*Third.* The third assignment of error is that the court "admitted improper testimony." What testimony? The motion for a new trial no further specifies. No bill of exceptions points it out. We can not regard this assignment There must be a bill of exception to point out the particular evidence improperly admitted or rejected. Such is the uniform practice. Surely, the motion for a new trial should do so, even if you could dispense with a bill of exceptions. A court is not required, in the hurry of term, to grope through pages and pages of evidence, without specification, to find the particular evidence. *Gregory* v. *Railroad Co.*, 37 W. Va. 606 (16 S. E. 819); *Halstead* v. *Horton*, 38 W. Va. 727 (18 S. E. 953). But this assignment seems not to be relied on.

Since I wrote the above, I notice the Virginia case of *Railroad Co.* v. *Shott*, 22 S. E. 811, holding that a bill of exceptions to the admission of evidence must point it out, and that there must be such bill, and the court will not, in its absence, roam through the evidence given on the trial.

*Fourth, Fifth.* These assignments of error are to the giving and refusal of certain numbered instructions. There is no bill of exceptions to bring these instructions into the record, as is the proper practice. The record does state that the motion for a new trial was on certain grounds—among them, the giving and refusal of instructions, giving their numbers. Certain instructions, noted as given or refused,

attested, and simply attested, by the clerk, are printed in the record, though not really in body of the record, as a part of it.

Can we consider the instructions, for want of bills of exceptions? The record nowhere mentions them, save that the order book shows that the defendant moved the court to grant a new trial on certain grounds—among them, that the court gave instruction No. 1 asked by plaintiff, and refused to give No. 2, and refused to give No. 3, as asked by defendant, but gave the same as amended. Certainly, it is necessary, to make instructions reviewable in this Court, that they should be part of the record, which is properly done by bill of exceptions—a device originally created by the statute of Westminster, to introduce into the record, as part of it, what otherwise would not be part of it, a plain instance of which is instructions. Then, does the above mentioned order make these instructions a part of the record? If it does, that will be sufficient; for, the only purpose of a bill of exceptions being to introduce them into the record, if this is otherwise effectually done, that will answer. Now, this order might be said not to do this, in the view that it is not the declaration of the court that these instructions were asked and rejected, but, at most, a mere recital by the court of the grounds of new trial, as put or alleged by the party. But waive that, and say that it is a statement of the court, and is it then sufficient? I have concluded it is, and that we ought not to deprive a party of their benefit, if, with any due degree of safety, and consistently with decisions, we can give him the benefit of them.

In *White* v. *Toncray*, 9 Leigh, 347, it was held that pleas tendered by a defendant, and rejected, are not part of the record, unless made so by bill of exceptions, or by order of the court that they shall be made so. This was approved in *Hart* v. *Railroad Co.*, 6 W. Va. 336, and *Sweeney* v. *Baker*, 13 W. Va. 159.

The only trouble about treating these instructions as part of the record is that there is no affirmative order directing them to be made a part of the record, as in the case of *White* v. *Toncray, supra;* but the order says distinctly that

the party moved for a new trial because the court erred in giving and refusing certain instructions, by number, and that his motion was overruled, and he excepted thereto. Why all this, if the court did not intend the instructions should be deemed a part of the record? I apply here the case of *Sweeney* v. *Baker*, 13 W. Va. 158, and on page 215 it is seen that there was no formal entry that the rejected pleas be made part of the record; but still, when the court states in its order that the pleas are rejected, and their rejection is excepted to, such statement could only be made by the court to give the party power to review its action. Just so in this case. But it is asked, how do we know the instructions found printed are the identical ones used on the trial? I answer, because the clerk attests them; and, as Judge Green said in *Sweeney* v. *Baker*, it is the duty of the clerk to preserve intact, and certify, the true papers, and they are just as likely to be true when mentioned merely in the order book by some earmark, as when mentioned in a bill of exceptions, as they are in such bill only mentioned by number, and are never in fact incorporated bodily therein. In principle, this would be so, as where one instrument refers to another by such earmark or index, or in such way as that it may be safely identified, the instrument referred to becomes a part of that referring to it. *Gunn* v. *Railroad Co.*, 37 W. Va. 421 (16 S. E. 628). I am not to be understood as intending to justify or relax the safe, proper practice of using bills of exceptions in such case; but none of us always come up to the scribe, in the hurry of work, and hence courts are often required to "make allowances," and struggle to save to parties the benefit of things intended to be done, but not done properly, so as to carry out what parties and court intended should go to the benefit of the party.

Now as to the instructions. No. 1 given for plaintiff is not argued in the court. Defendant's instruction No. 2. "(2) Before the jury can find for the plaintiff, they must believe from the evidence that both Jesse H. Willis and Elias J. Nixon were insolvent on the date the plaintiff, Flora Hughes, became entitled to collect the note described in the bill of particulars in this case, and at maturity thereof; and

they must furthermore believe from the evidence that Frum made an assignment of the said note to the plaintiff, or promised, by some memorandum or note in writing, to pay the same upon default by said Nixon and Willis. (Refused. Objected to.)"

This is faulty. It says that both Willis and Nixon must be insolvent. If Frum really assigned the note, and Nixon was insolvent, the plaintiff could sue Frum, if her immediate assignor, though Willis was solvent; or, if he was her remote assignor, she could sue Frum (Code, c. 99, s. 15) —could sue either. The instruction fixes the maturity of the note as the test date of the insolvency, whereas it is when a legal proceeding for collection proves abortive. A debtor may be good when the note on him becomes due, yet, if insolvent when execution is issued, the assignor is bound. That clause of the instruction requiring, as a basis of recovery, that Frum must have assigned the note, is right; but the closing clause, requiring a promise in writing, is not pertinent, for the reason that there is no count in the declaration calling for recovery against Frum on the theory that he promised payment otherwise than as assignor. The right to recover was limited to the basis of an assignment of the note by Frum, because there was no special count and, as for the general count, the particular one for money had and received was the only one material, since the bill of particulars specified that count as the only one material, because it specified an assignment of the note as the sole ground of recovery, and that was recoverable under that count alone, as shown above. Hence, there is not an iota in the declaration specifying a promise to pay the debt of another, as the basis of recovery, and thus requiring a written promise. Had there been, this clause would be applicable, but not so as the declaration is. If there was an assignment, a writing was not necessary. If there was not, the clause was foreign to the trial.

Instruction 3 was foreign and irrelevant to the action, as there is nothing in the declaration relative to a promise by Frum to pay the debt if Nixon and Willis did not, other than on the theory of assignment of the note by Frum, while this instruction asserts the necessity of a writing,

signed by Frum, assuming to pay. As just said, if there was an assignment, it propounded the law incorrectly, in requiring a writing; and on the theory of an independent promise to pay, otherwise than as assignor, it was irrelevant. It seems to be based on this theory to meet some evidence of a promise by Frum to pay the note if Nixon did not; and, were there anything in the declaration to warrant a recovery on that ground, the instruction would seem to be good, but there is no such right of recovery pleaded.

Because the only ground of recovery under the pleadings is that of assignment by Frum to Miss Hughes of the Nixon note, and no such assignment is shown, the judgment is reversed, the verdict set aside, and a new trial granted.