# CHARLESTON.

Kay v. Glade Creek & R. R. Co.

Submitted January 23, 1900.—Decided March 24, 1900.

1. Stenographic Notes—*Exceptions Considered.*
Where a stenographic report of evidence is made part of the certificate of evidence upon a motion for a new trial, and it shows objections to questions or evidence, and rulings of the court thereon, and that such rulings were excepted to, and the particular question or evidence complained of is specified distinctly in the motion for a new trial, or in an assignment of error, or in brief of counsel, so that the appellate court can readily and safely find the particular question or evidence to which the exception relates, the appellate court will consider the matter excepted to, though there is no formal bill of exceptions thereto; but such matter will not be considered without such specification, even though such report of evidence notes such objection and exception. (p. 470).

2. LANDOWNER—*Railroad—Damage.*

In ascertaining damages to a landowner, flowing to the residue of his tract, from the construction of a railroad, danger to buildings, fences, forests, and the like, from fire emanating from locomotives, may be considered as an element of damages, so far as such danger lessens the value of such residue; but such danger must be real, imminent, and reasonably to be apprehended,—not remote or merely possible. The question is, is the residue depreciated in value from that cause, and how much?   (pp. 474-475).

3. TRIAL—*Evidence—Material Exception.*

Where there is an exception to the ruling of the trial court, for allowing or refusing to allow a question to be answered by a witness, and it does not appear what the answer was, or what was expected to be proved by him, an appellate court will not consider the exception, as it cannot determine the relevancy, admissibility, or value of the answer or expected answer. If the question alone show that its answer must be material, and it is refused, it is different. If an answer is stricken out, it must appear, else it will not be considered.   (p. 478).

4. DAMAGES——*Evidence— Witness—Opinion.*

Opinions of witnesses not personally acquainted with land appropriated for railroad purposes are not admissible as to the value of the land actually taken, or damages to the residue, it not being a question of expert evidence; but a person so acquainted and conversant with the land may state the circumstances and respects in which the land is prejudiced or benefited by the railroad, and may then express his opinion as to the value of the land after completion of the road as compared with what it was before.   (p. 479).

Error to circuit Court, Raleigh County.

Action by Elizabeth Kay against the Glade Creek and Raleigh Railroad Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

McGINNIS & McGINNIS and JOHN 'W. McCREERY, for plaintiff in error.

A. P. FARLEY and J. E. SUMMERFIELD, for defendant in error.

BRANNON, JUDGE:

Elizabeth Kay brought an action of trespass on the case in the circuit court of Raleigh County against the Glade

Creek and Raleigh Railroad Company to recover damages sustained by her from the taking of land of hers and using it for the construction of its railroad, and also for damage done to her by fire claimed to have been started from sparks emitted from a locomotive on said railroad, burning some fencing and injuring timber. A jury found a verdict for one thousand dollars, for which the court rendered judgment, and the company has brought the case to this Court.

A question important in daily practice arises in this case, which seems, under our decisions, to be in a state more or less chaotic and unsettled. The defendant moved the court to set aside the verdict, and, the court having refused to do so, certified all the evidence as taken down by the stenographer; incorporating it in a bill of exceptions, duly noted on the record. Thus, all this evidence is made part of the record by that bill of exceptions. The defendant complains that certain questions propounded by it were ruled out and not allowed to be answered, and that certain questions asked by plaintiff, and objected to by the defendant company, were allowed to be answered. These questions were not made the subject of bills of exception, according to the usual practice, but the stenographic report shows the matter in this wise: When objection to a question was sustained, the report says: "Objection. Sustained. Exception." When objection to a question was not sustained, the report merely says: "Objection. Overruled. Exception." Does this give the excepting parties the benefit of the exception? The questions appear from this report; the objection appears; the exception appears; all the things appear that would appear from a formal bill of exceptions, except only particularity or specification of the particular questions or answers. To get them the Court has to grope though the whole report of the evidence, consisting of hundreds of pages very frequently,—in this case one hundred and sixty-four printed pages, consisting of hundreds of questions and answers; and very often a printed record contains several times that much. Can an appellate court be asked to winnow out from the great mass of questions and answers the particular ones constituting the ground of complaint? In the

case of instructions or other documents admitted or rejected, the task is not difficult, and the danger of mistake small; but in the case of multitudinous questions it is both difficult and dangerous, from the liablity to miss the point. The Virginia Court of Appeals, in *Railroad Co.* v. *Shott*, 92 Va. 34 (22 S. E. 811) says: "A general bill of exceptions, certifying all of the evidence, and noting at intervals that objection was made to questions propounded, and the objection overruled, and exception taken, is not a sufficient exception to the ruling of the court on such questions. In order to have the benefit of an exception to the ruling on a motion to reject or admit evidence, there must be a bill of exceptions, signed by the judge, clearly and distinctly pointing out each erroneous ruling complained of; otherwise, the objection will be regarded as abandoned. And while there may be several exceptions saved by the same bill, yet each must set forth clearly and distinctly the ground of objection relied on, so that there may be no confusion amongst them." So, in *Railroad Co.* v. *Ampey*, 93 Va. 108 (25 S . E. 226), where there was a stenographic report, the court held that "objections to the admission or exclusion of evidence, or to giving or refusing instructions, should be brought directly to the attention of the trial court, and, if overruled, a proper bill of exception should be taken, specifically and definitely setting forth the allegation of error, and so much of the evidence as is necessary to render clear the propriety or impropriety of the ruling of the court; otherwise, the exception, though noted at the time, will be treated by the appellate court as waived or abandoned." Under those decisions, we could not consider the points complained of in this case. They state the rule of practice always observed before the advent of stenographic official reports of evidence under statutes such as that found in the Code of 1891 (page 1062). That statute makes such report "official and the best authority in any matter of dispute, and a copy of the same, made as hereinafter provided, shall be used by the parties to the cause in any further proceedings, wherein the use of the same may be required." In *Cummings* v. *Armstrong*, 34 W. Va. 1, (11 S. E. 742), this statute, and the virtue of stenographic reports under it, are discussed by JUDGE

Lucas quite elaborately and well.  His view made that report, *per se,* by force of the statute alone, part of the record.  Judge Snyder and myself could not go so far as to hold the report a part of the record, and of absolute verity as such, merely by force of the statute; but we did concede that when that report was made a part of a bill of exceptions by the Judge, and thus signally verified by him as correct, such report of evidence became part of the record, and entitled to credit as such.  That has been done in this case.  I again ask, can the exceptions to the admission and exclusion of evidence, merely noted in short in the stenographic report, in the manner above indicated, be considered by the Supreme Court, in the absence of a bill of exceptions, under the usual practice, specifically designating the particular evidence complained of as erroneously admitted or excluded?  I repeat that the objection, ruling, and exception are part of the record; and where the answer is given, it is part of the record, also.  Thus, the only trouble is want of specification, in the great volume of evidence, of the particular questions allowed or refused to be answered.  Let us see what light our past decisions may cast upon the questions:  In *State* v. *Harr*, 38 W. Va. 58 (17 S. E. 794), we find that section 4 of the syllabus says that:  "To make available in the Appellate Court an objection taken during the trial to the admission of evidence, the point must be made, and properly saved by some bill of exceptions.  It is not enough merely to note the objection and exception in the certificate of evidence."  There is, however, nothing in the opinion touching it.  The same holding is found in the syllabus in *Poling* v. *Railroad Co.*, 38 W. Va. 645 (18 S. E. 782), 24 L. R. A. 215; but this holding is somewhat qualified by the statement on page 658, 38 W. Va., (page 786, 18 S. E.), and page 222, 24 L. R. A., that the point "must in some way be so set out as to be capable of being easily found and identified."  So, according to that case, if the particular point can be identified,—safely picked out of the mass,—it is allowable to do so, and save the excepting party the benefit of his point, as was intended by the circuit court, and by the party himself, and by the statute.  The case of *Gregory's Adm'r* v. *Railroad  Co.*, 37 W. Va. 606 (16 S. E. 819), does

not settle the precise point. It holds that where a party moves to set aside a verdict on certain specific grounds, not mentioning others, he waives the others, unless he has made those others the subject of bills of exceptions; that where it is claimed that evidence has been improperly admitted, and exception noted, but no bill of exceptions taken, and the record states that the motion for a new trial was based on certain specific grounds, not naming the admission of such evidence, that exception will be considered as waived in the Appellate Court. It is to be noted that on page 609, 37 W. Va., and page 820, 16 S. E., it is stated in the opinion that, "if the motion for a new trial had stated that it was based on the improper admission of such evidence, then we could say that the statement in the certificate of evidence that the party had objected and excepted to its admission would be sufficient, without a bill of exceptions."

The question before us is, what shall this Appellate Court adopt as a rule of practice, under the statute mentioned above, as regards objections and rulings and exceptions merely noted in the stenographic report of the proceedings and evidence in a trial? Must the party complaining, who has objected and excepted to the courts' rulings, wholly lose his point because he did not take a formal bill of exceptions, as the Virginia court decided in cases above cited? Why shall he do so, when we can safely find his point? Would not that defeat the purposes of this statute? Is it not intended to portray all the events of the trial? As the trial is taken down, it saves time and great labor to utilize the report for the purpose of showing the thing taking place during its progress. The statute is here, and is acted on, and the report is made official by it. But, on the other hand, here is a great volume of questions, answers, and proceedings, and it is utterly out of the question to ask an Appellate Court to grope through the labyrinth of matters contained in the report, questions, objections, answers, remarks of counsel and judge, documents, etc., without some guiding specification. To do so would involve a consumption of time, labor on the Court, and, worse yet, great danger of missing the real point or matter complained of as error. My conclusion is that, if the assign-

ment of error or brief of counsel clearly and distinctly specifies the question refused or allowed,—the particular point complained of, with a specification of its place in the report of the proceedings, - this Court ought to consider it; otherwise, not.   This much ought to be required of the counsel who make the complaint, and who ought to put the finger on the points of complaint; he being well versed in the case, and knowing his grievance.  Of course, if there is such specification embodied in the motion for a new trial, that will answer; but a mere general statement that the new trial is asked on the ground that the verdict is contrary to the evidence, or because of the admission of improper evidence, or because of the rejection of proper evidence, will not do.   But what as to the circuit court? How is it to be protected from the obligation to wander through the great mass of proceedings in a long trial? The evil is not so great in that court, because the judge has witnessed the trial, made notes of the questionable points, and most likely in every case the particular points are specified at the bar by counsel on the motion for a new trial; and if not so specified, as they should be, the judge can demand that they be specified, if he feels the need of specification to refresh his memory and recall the particular points to his mind.   There are numerous cases which, though not just on this point, yet show that all that should be required to save a party his point is that it shall definitely appear on the record what is the point aggrieving him, and that he saved his point, and did not waive it. *Hughes* v. *Frum*, 41 W. Va. 453, (23 S. E. 604) ; *Perry* v. *Horn*, 22 W. Va. 381; *Bank* v. *Showacre*, 26 W. Va. 48; *Sweeney* v. *Baker*, 13 W. Va. 158; *Wickes* v. *Railroad* Co., 14 W. Va. 157.

Following this ruling, the assignment of error points out that witness Scott was asked, if a map was correctly made of the location of the railroad, to tell the jury what damages Mrs. Kay sustained by reason of the road, and was allowed to answer, over objection, that he understood that he "should take into consideration all the damage to Mrs. Kay's property that would originate from this road, and not the damage to the tract generally."  The objection is stated to be that the witness was valuing damage to the property that had been done, and what might be done in

future, from fires that might happen. I think this specification is sufficient, under the principles above stated, to call upon us to consider the point; and this involves a very important question, which, so far as I know, remains undecided in this State, and that is whether, in assessing compensation in condemnation proceedings, or in an action like this, for damages for taking land and using it for railroad purposes, other than that condemned therefor, danger from future fires caused by the locomotives on the road can be considered. The authorities conflict. 3 Elliott, R. R. § 996 (a late and very able work on the subject), states the law to be that "the increased danger from fire emitted from the locomotives, the increased cost of insuring buildings and their contents, * * * have been held proper subjects for compensation in damages." There is no doubt but that such is the preponderance of authority. Mills, Em. Dom. § 163, says: "Among the damages occasioned by the location of a railroad on a portion of land is the exposure of the crops and buildings on the land to fire, from the sparks emitted from passing trains. The apprehension of fire is an element of damages, notwithstanding the railroad company may be compelled by law to answer all damages, whether resulting from negligence or not. The owner may prudently insure, notwithstanding the liability of the company to pay damages. The adjacency of the road to the property is an increase of risk, and increases the cost of insurance. Increase of cost of insurance diminishes the value of the buildings. An action against a railroad company for damages caused by fire is a poor substitute for insurance. The owner may select his insurance company, but cannot select his railroad. The present value of building for purposes of residence or for sale is diminished by the effect of a constant liability to fire on account of proximity to a railroad. The danger, to be considered, must be real and imminent, and will not be considered when buildings are at some distance from the railroad. If the danger is such as render it advisable to remove the buildings, the cost of removal is a proper subject of damages. A secretary of an insurance company can give an estimate of damages from the increase of the rate of insurance, and can also testify that his company

had refused the risk on account of increased hazard. In some states the doctrine is denied, because of the uncertain and contingent nature of the damages, and because the railroad would be responsible for fires caused by negligence. Railroad companies are not responsible for accidental fires, unless guilty of some negligence, and it is not negligence to employ locomotives." Lewis, Em. Dom. § 497, says: "When a part of a tract is taken for railroad purposes, danger from fire to buildings, fences, timber, or crops upon the remainder, in so far as it depreciates the value of the property, may be properly considered. It is immaterial that the railroad company is made absolutely liable for all losses by fire which originate from the operation of the road, whether from negligence or otherwise. Such a liability would doubtless render the depreciation in value less than in cases where the company was liable only for fires resulting from negligence. It is to be borne in mind that compensation is not to be given for increased exposure to fire, nor for increased insurance rates, nor for probable losses by fire in the future for which no recovery can be had, but simply for depreciation in the value of the property by reason of danger from fire. The evidence should be limited to showing all the facts in regard to the situation of the property and improvements relatively to the railroad, and perhaps to showing the distance from the road to which the danger extends." Under these authorities, the question is, is the value of the property lessened by the reasonable apprehension of damage from fire caused by the operation of the road? And, if so, the amount of that depreciation. Note, however, that such danger must be such as, under all the circumstances, may be reasonably apprehended, not remotely chanceful or hazardous. The danger must be real, imminent, not mere possible danger. *Hatch* v. *Railroad Co.*, 18 Ohio St. 92; *Jones* v. *Railroad Co.*, 68 Ill. 380; *Proprietors of Locks and Canals* v. *Nashua and L. R. Co,*. 10 Cush. 385; *Railroad Co.* v. *Waldron*, 88 Am. Dec. 116; *Colvill* v. *Railroad Co.*, 19 Minn. 288, (Gil. 240); *Adden* v. *Railroad Co.*, 55 N. H. 415. In *Railroad Co.* v. *Ross*, (Kan. Sup.) 20 Pac. 197, and in *Railroad Co.* v. *Kregelo*, 32 Kan. 608, 5 Pac. 15, the Kansas court held that, while danger from fire is to be

taken into consideration as an element of damage, yet, "it is competent only to take into consideration the risk of fire set out by the railroad company without its fault, and by reason of the operation of the road through the premises. For fires occuring by its negligence the company is liable in a proper action instituted therefor and this element should not be taken into account in estimating the damages." This distinction seems to me reasonable. We must not anticipate the occurrence of fire from the misconduct and negligence of the company's employes; for that would be purely guesswork, speculative and not to be presumed, and until it occurs no damage results therefrom, and then the company is liable, whereas it may be reasonable to anticipate and expect fires damaging forests, houses, barns, and hay or wheat stacks, in times of drought, from the mere operation of the road, without negligence. We ought no more to anticipate negligence in the future from the operation of the road than we anticipate negligence in the improper construction of the road in assessing damages in condemnation proceedings, and such damages are never allowed. This railroad ran through timber lands of Mrs. Kay, and did set fire to fencing, and destroyed considerable fencing, and injured her timber. This had really happened, and therefore we can by no means say that evidence bearing on the question of damages from dangers of fire in the future was improperly admitted.

Complaint is made that witness Scott was allowed to answer certain questions on a certain page of the stenographer's notes, and others "as shown in the record." I do not find the questions. The specification is too indefinite.

As to the complaint that evidence of John Dillon and others was improper: No point is specified, except the general one that they did not know what they were talking about, for want of knowledge. That was a question for the jury, as to the weight of the evidence, not a question of admissibility.

As to the complaint that the jury disregarded the award made by arbitrators as to the damages: The award is lost from the record. Moreover, it was not binding on Mrs. Kay, as no evidence is shown of authority on the part of

her husband to sign it for her, and it was never carried into judgment.

As to the complaint that there was no evidence to show that the fire that burned fencing and damaged timber came from the defendants' locomotive: Turner Ransom's evidence was before the jury, and, to say the least, was some evidence on the subject; and we cannot set aside the verdict for that cause. I think it is enough to fairly impute the fire to the locomotive of the company. The jury passed on the question of negligence. If anything was allowed on that score, it is probably under one hundred dollars; and, therefore, if there were error in that, that alone would not justify reversal.

As to the refusal to allow Carpenter to answer the question first asked on page 83 of stenographer's notes: The original notes are not before us. The specification is too indefinite. If it refers to what Kay said, there is a want of authority to bind his wife to his declaration.

As to the refusal to allow Wright to answer the question, "What did William Kay tell you, at the time this award was made by the arbitrators, in regard to it?" There is no authority in Kay shown to bind his wife.

As to striking out the answer of Boxley, on page 102 of stenographer's notes, not before us: Guessing at it, he says that Carpenter and Wright were to meet, to go over the line and get Kay to consent to the construction of the road, but failed to do so, and he then agreed that the construction should be proceeded with, and, if they could not agree on the compensation, the matter should be arbitrated. How does the exclusion of this answer prejudice the defendant? It only shows the agreement of the husband to arbitrate, and his authority to do so is not shown. Suppose the plaintiff had agreed to do so, but failed to finally agree to it; it would not preclude this action.

As to the refusal to allow Scott to answer certain questions: They are not sufficiently specified, under above principles. I am not sure, that I could find them, except by guesswork.

In addition, as to all these questions which the court refused to allow to be answered, they cannot be considered, for the reason that the answers are not given, nor is it

stated what was expected to be proven by the answers. How can we say what the answers would be,—material or immaterial, relevant or irrelevant? We cannot say the party is aggrieved by the refusal. In *Jackson* v. *Hough*, 38 W. Va. 236, (18 S. E. 575), is the syllabus: "Where a question is not allowed to be answered by a witness and it does not itself import that its answer will prove a fact material, and it does not otherwise so appear, the refusal to allow it to be answered will not be ground of reversal." In *Childress' Adm'x* v. *Railway Co.*, 94 Va. 186, (26 S. E. 424), the rule of practice is stated to be that if an exception for allowing or refusing to allow a question to be answered by a witness "fails to give the answer of the witness, or what is expected to be proved by him, the appellate court cannot determine the relevancy, admissibility, or value of the answer, and the exception will not be considered." The same is held in *Insurance Co.* v. *Pollard*, 94 Va. 146, (26 S. E. 421), 36 L. R. A. 271, and *Kimball* v. *Carter*, 95 Va. 77, (27 S. E. 823), 38 L. R. A. 570, and *Railway Co.* v. *Reiger*, 95 Va. 418, (28 S. E. 590), and *Beirne* v. *Rosser*, 26 Grat. 537.

The last ground of complaint against the judgment is that the verdict for one thousand dollars against the company is excessive. I cannot myself help saying that, from what I can glean from the cold paper view of the case, I regard the verdict as high and onerous in amount,—beyond just compensation. The company occupies three and seventy-eight-hundredths acres of the plaintiff's land, all in woods, on a steep mountain side; very, very rough; of almost no value for farming purposes; placed by most of the witnesses at low value,—one of the most intelligent of plaintiff's witnesses putting it at four dollars or five dollars per acre. For that land, of course, the plaintiff must have pay, but I can hardly see, on the evidence, that the residue of the land is not worth as much for all purposes as before the railroad went there; and that is the test. *Board of Education* v. *Kanawha and M. R. Co.*, 44 W. Va. 71, (29 S. E. 503). But I may be wrong in this conception, and that I am wrong is attested by the verdict of twelve men, approved by a competent circuit judge, all of whom were present, and experienced the practical showing of the trial,

and are more competent to judge than I am from mere paper. And I must not forget or disregard very material evidence entering into this question of damages.   The plaintiff's claim is that from the construction of the road on her land on the steep mountain side, by making a switchback, her land is cut up and separated, and deep cuts have been made and thereby outlet for her timber as well as coal has been destroyed; that rocks and other debris from coal mining have no place of deposit on the steep mountain side, but would slide into the railroad; and that there is no place for loading the coal or timber and it cannot be got out, except with expensive structures.   If this be so, of course the damage is serious, and there was very considerable evidence to show this.   Evidence on the plaintiff's side fixes the maximum damage at one thousand three hundred dollars and on the defendant's side at practically nothing.   In truth the valuation is mere matter of estimate or opinion on both sides.   Opinion evidence, however, is in such cases admissible,—in fact, in most cases controlling, in connection with the facts and circumstances.   *Blair* v. *City of Charleston.* 43 W. Va. 62, (26 S. E. 341), 35 L. R. A. 852; *Railroad Co.* v. *Foreman,* 24 W. Va. 662; *Hargreaves* v. *Kimberly,* 26 W. Va. 797.   A farmer not knowing the market value of real estate, not living in the neighborhood of the particular land, and who does not know its situation, fertility, advantages, and disadvantages, cannot give his opinion as to the value of the land before and after the appropriation of the right of way by a railroad company, as it is not a question of expert evidence; but a farmer conversant with the land, as to its situation, soil, advantages, etc., may state the facts, circumstances, and respects in which the land is benefitted or injured, and in connection therewith may state his opinion of the value of the land before, as compared with its value after, the appropriation of the right of way by a railroad company.   He may not express his mere naked opinion of the amount of damages caused by the work, but must state his opinion of the value of the land before and after the construction of the railroad, in connection with the facts and circumstances relative to the land flowing from the construction of the railroad.   Where the law fixes a standard of estimation of

damages, and a jury departs from it, the verdict must be set aside; but I do not see that such is the case in this instance, and therefore the Court cannot interfere with the verdict of the jury, unless it be so large or small as to enforce upon the Court the conviction that the jury acted under the impulse of some improper motive or some gross error, or a misconception of the subject. *Railroad Co.* v. *Shott*, 92 Va. 34, (22 S. E. 811); *Railroad Co.* v. *Nighbert*, 46 W. Va. 202, (32 S. E. 1032). These views result in the affirmance of the judgment.

*Affirmed.*