# Wytheville.

## NORFOLK AND WESTERN RAILROAD CO. v. H. I. SHOTT.

### AUGUST 1, 1895.

1. RAILROADS—*Passengers—Postal Agent.*—A mail agent or postal clerk, traveling on a passenger train in the legitimate discharge of his official duties, is a passenger.

2. MOTION FOR CONTINUANCE—*Discretion—Review.*—A motion for a continuance is always addressed to the sound discretion of the trial court, and, though the action of the trial court is subject to the supervision of the appellate court, it will not be reversed unless *plainly erroneous.*

3. BILL OF EXCEPTION—*Requisites of—Several Points in One Bill.*—A general bill of exceptions, certifying all the evidence in a case, and noting, at intervals, that objection was made to questions propounded, and the objection overruled by the court and exception taken, is not a sufficient exception to the ruling of the court on such questions. In order to have the benefit of an exception to the ruling of the trial court on a motion to reject or admit evidence, there must be a bill of exception, signed by the judge, clearly and distinctly pointing out each erroneous ruling complained of; otherwise the objection will be regarded as abandoned. And while there may be several exceptions saved by the same bill, yet each must set forth clearly and distinctly the ground of objection relied on, so that there may be no confusion amongst them.

4. VERDICT—*Excessive or Too Small—When Set Aside.*—The verdict of a jury will not be disturbed in cases where there is no legal measure of damages, unless it is so large or so small as to indicate that the jury has acted under the impulse of some improper motive, or some gross error, or a misconception of the subject.

5. ARGUMENT OF COUNSEL—*Exceptions to—When to be Taken.*—Objections to the argument of counsel, made for the first time after the verdict of the jury, come too late to be availing, if the court can see that a proper verdict has been rendered.

Error to a judgment of the Circuit Court of Pulaski county, rendered August 16, 1893, in an action of trespass on the case, wherein the defendant in error was the plaintiff and the plaintiff in error was the defendant.          *Affirmed.*

This was an action of trespass on the case to recover damages for a personal injury. The evidence is certified, and not the facts, and it is apparent from the bill of exceptions that the evidence is simply that taken down by a stenographer and inserted, without change, in the bill of exceptions. In several instances questions were propounded to the witness, and objection made by the defendant. The objection was overruled, and the defendant gave notice that he would save the point, but no bill of exception was filed to the ruling of the court. The evidence as certified gives the questions propounded to the witnesses, and their answers thereto; and in several instances where objection was made the only note of the objection is that made by the stenographer, in this form: "The court overruled the objection; defendant saved the point."

One of the objections made by the defendant in the court below, and which seems to have been insisted upon, was the action of the court in overruling the defendant's motion for a continuance of the case. When the case was called for trial on August 2, 1893, the defendant moved for a continuance, and, in support of its motion for continuance, offered in evidence the statement of counsel for the defendant that Dr. R. H. Cowan was a material witness; "that the defendant could not safely go to trial in his absence, and that the defendant could not prove the same facts that he expected to prove by said R. H. Cowan by any other person; which statement the court accepted as proof of said facts."

The defendant further proved that on June 26, 1893, it caused a *subpœna* to be issued for A. J. Black to appear before

the court on the 24th day of July, 1893, and on July 26, 1893, it had a *subpœna* issued by the clerk for A. J. Black and R. H. Cowan, returnable July 24, 1893, on which last-mentioned *subpœna* was endorsed an acknowledgment of legal service, which was signed by the said Cowan and Black; that both of these *subpœnas* were delivered by the clerk to the defendant's attorney at the same time, and were sent by said attorney to J. G. Osborne, the superintendent of the railroad, at the same time.

"And that after said *subpœnas* were delivered to said J. G. Osborne the name of R. H. Cowan was inserted in said last-named *subpœna*, and the said Cowan acknowledged service of said last-named *subpœna*, which is dated July 26th, 1893, by endorsing thereon the words, 'We acknowledge legal service of the within summons,' and signed his name to said endorsement, but it did not appear when the said endorsement was made or signed by the said R. H. Cowan and R. D. Gardner. The clerk who issued the said *subpœnas* was introduced, and testified that the name of Dr. R. H. Cowan, written in the said *subpœna*, was not in his handwriting, and that Cowan's name was not in said *subpœna* when it left the clerk's office. The clerk also stated that he had examined his witness-book, and that there appeared no name of any witness thereon but Dr. A. J. Black, and that both of said *subpœnas* were issued the same day, and that the date, July the 26th, 1893, was a mistake, he thought.

"And the court certifies· that it did not appear when and by whom said Cowan's name was inserted in said *subpœna*.

"It was also proved that R. H. Cowan lives in Pulaski county, about eight or nine miles from the court-house.

"It was also proved that said Cowan was a physician in the employment of the defendant company.

"Dr. A. J. Black was introduced, and stated that he accepted service of said *subpœna*, as shown by his endorse-

ment thereon, on the 31st day of July, 1893, in the town of
Radford, Va., and the same was presented to him by Mr.
————, a time-keeper in the employment of the defendant
company, and that when he accepted said service R. H. Cowan
had accepted service thereof, but he did not know when said
Cowan had accepted service of said *subpœna;* that Radford
is ten miles from the court-house, and that said Cowan lives
about one mile from Radford. And the witness further tes-
tified that there was a number of physicians in Roanoke,
some of whom were in the employment of the defendant
company.

"The court refused to continue the case at that time, but
postponed the trial to give defendant an opportunity to pro-
cure the attendance of its witness, and directed that a new
summons for and rule against said absent witness, R. H.
Cowan, be issued, returnable the next day, which was Thurs-
day, the 3d day of August.

"The *subpœna* and rule were issued and placed in the
hands of the sheriff of Pulaski county, and on the next day
the said sheriff, by J. M. Brown, his deputy, returned both
said summons and rule ' executed on R. H. Cowan by leaving
an office copy with his wife at his residence, and explaining
to her the purport thereof, the said Cowan being from home.'

"The said deputy sheriff also stated on oath that after leav-
ing the residence of the said witness he met said witness on
the railroad near Schooler's station, not far from witness'
residence, and that he then informed said witness that he had
left the said summons and rule at his house with his wife, and
explained to witness what they were, and said that he had
the originals, which he would show to him if he desired; and
that witness told said deputy sheriff that he could not attend
court the next day as a witness in the said case, because he
had some important surgical cases on hand, which he could
not leave, and that among others he had a patient at Roanoke

suffering from a severe scalding, and that he was going to Roanoke to see him the next day.

" And the said witness again failing to appear on Thursday, the 3d day of August, in answer to said summons, the rule served on him the night preceding, defendant again announced that it could not safely go to trial without said witness, Cowan, and that it could prove the same facts by none other, and moved the court to continue the case; which motion the court overruled, but postponed the trial to Saturday, the 5th day of August, to give the defendant further time to procure the attendance of its said witness.

" The court then directed that another rule should issue for said witness, returnable the morning of the 5th of August, but declined to award an attachment asked for by the plaintiff, because, in the court's opinion, the rule which had been executed upon said Cowan, above referred to, was improvidently awarded in this, that the summons accepted by Cowan, dated the 26th day of July, 1893, and returnable the 24th day of July, 1893, did not constitute a proper ground for such attachment.

" The said rule was issued, directed to the sheriff of Pulaski county, and also one to the sheriff of Roanoke county.

" The last-named rule was delivered to one I. L. Swisher, a private person employed by the plaintiff to execute the same, who carried the same to Roanoke city, where he found the said witness at the train-master's office of the defendant, waiting to take a freight train back to his home.

" That the said Swisher then and there delivered to said witness a copy of said last-named rule, and the said witness then endorsed his name on the back of said rule.

" That the said witness, Cowan, then said to said Swisher that he (the witness) then expected to be in bed the next day; that he had lost a great deal of sleep, and that he thought it was nothing but ' damn pig-headedness ' in the judge to require him to attend court under the circumstances.

Statement.

" The said witness then and there wrote the following letter to the judge of this court:

*Judge Williams:*

Dear Sir,—I explained to Mr. Brown, and also wired you through Mr. Phlegar this A. M., my reason for being unable to attend court. I have. my hands full of surgical cases that may demand my attention at any time, and do not see how it will be possible for me to get off in the next few days without neglecting my injured men, to their detriment. If you require me to come whether or no, of course I will come, after explaining the matter to them, but I will come under protest. If, then, you are unwilling to consider my excuse valid, please advise me to-morrow.

Respectfully,

R. H. COWAN.

" Which said letter was handed to Swisher by the witness, and was delivered by Swisher to Judge Williams the next day, which was the 4th day of August. The court certifies that he did not receive the telegram referred to through Mr. Phlegar. That immediately upon receipt of said letter it was shown by the judge to J. E. Moore, Esq., attorney for the defendant, and said attorney was informed by the judge that he must notify said witness that he must obey the rule, and said attorney at once telegraphed said witness what the judge had said. Judge Williams also wrote the following note to the said witness:

[Copy.]

*Dr. Cowan:*

Your communication without date received. You are required to obey the process of the court.

Respectfully,

SAM'L W. WILLIAMS.

August 4th, 1893.

" Which note was sent by a deputy sheriff to witness; which note was written by request of counsel for the plaintiff, and sent by them. And said deputy proved that when he reached the residence of the witness, on the afternoon of August 4th, he found witness in bed with his dress-shirt off and his under-shirt on, and he did not know whether he had his pants on or not, and that witness complained of being sick, and that witness looked very much worn out; and when he was handed the note from Judge Williams he (witness) said he had received a telegram to the same effect from J. E. Moore, Esq., about two hours before, and had been in bed ever since; that witness first said he could not go, but, upon being told by the deputy sheriff that if he did not go he would have to haul him and take him under an attachment, witness said : ' Tell the judge I will be there in the morning.'

" On the next morning, the 5th of August, when the said cause was again called, the said witness not being present, the defendant again moved for a continuance, on the ground of the absence of said witness, and, to sustain its motion, produced a telegram received by its attorneys, Moore & Berkley, that morning, from J. G. Osborne, the defendant company's superintendent, whose office is at Radford, in the words and figures following :

*Telegram.*

*Moore & Berkley :*

Will be unable to get Dr. Cowan there to-day. He is sick in bed. Will send doctor's certificate and other witnesses on No. 1.                                                J. G. O.

" And also produced a certificate from Dr. Aaron Jeffreys, dated August 4th, 1893, in the following words :

*Certificate.*

Dr. Robert H. Cowan is confined to his bed, and is too ill to attend court.

AARON JEFFREYS, M. D.

" And also proved by Dr. A. J. Black that he was acquainted with Dr. Jeffreys, and was acquainted with his handwriting, and the said certificate, purporting to be signed by him, was in his handwriting; and also proved by Drs. A. J. Black and W. H. Bramlett that Dr. Jeffreys is a practicing physician in good standing, and a reputable and honorable gentleman, and sometimes in the employment of the defendant company.

" The plaintiff then proved by the engineman in charge of the engine that brought the passenger train No. 1 from Roanoke on the morning of the 4th of August, that he saw the witness, Cowan, on the depot platform at East Radford, about two miles from Cowan's home, shortly after the arrival of his train, between 10 and 11 o'clock; that East Radford was the station at which the witness would leave the train going to his home, but said engineman did not know whether said witness came on that passenger train or not.

" And the court certifies that on the first day of this term of this court, to-wit, on the 24th day of July, 1893, counsel for the plaintiff in this case, in open court, called up this case out of its order, and before it was reached on the docket, and in the presence of counsel for the defendant, and asked that a day be fixed for the trial, upon the ground that associate counsel for the plaintiff and many of its witnesses lived at a distance from the court, and that he desired to have them here and press the trial of the case. The court announced its rule to be not to set cases for trial on any particular day, but that counsel might agree that the case should not be called before a particular day, and that the court would respect the agreement. Whereupon the case was passed until the following Monday, the 31st day of July, 1893.

" And the court further certifies that the case was regularly reached and regularly called on Wednesday, the 2d day of August, 1893, when the plaintiff announced himself ready

and urged a trial, and the plaintiff also opposed a postpone-
ment of the case, as hereinbefore set out.

" The court further certifies that the plaintiff caused to be
issued a *subpœna* for the witness A. J. Black. (Said
summons misplaced.)

" And that the said Black also testified that it was the
custom of the defendant company to have its witnesses accept
service of summons, and then afterwards the defendant would
notify the witness what day to appear at court; that he
received no such notice from the defendant company after
accepting the service of the summons in this case, but that
he appeared here in obedience to both of said summons.

" The hearing of the case was adjourned over until August
7th, 1893. On the latter day the defendant again moved the
court to continue the case, on the ground of the absence of
the witness, Dr. R. H. Cowan, without whom the defendant
stated he could not safely go to trial; and to maintain said
motion the defendant offered in evidence a certificate in
writing, dated August 7th, 1893, from Dr. Aaron Jeffreys, in
the following words:

*Certificate.*

RADFORD, August 7th, '93.

This is to certify that Dr. Robert H. Cowan is confined
to his bed, and will be unable, in my opinion, to attend his
business or to attend court for several days. I have ordered
him to keep in bed to-day on acct. of his ill health.

AARON JEFFREYS, M. D.

" And the defendant also proved by Dr. A. J. Black that
the certificate aforesaid was in the handwriting of the said
Dr. Jeffreys.

" And further proved by the said Dr. Black that he visited
the said Dr. Cowan at the latter's residence, in Pulaski

Opinion.

county, on Sunday evening, the 6th inst., between 7 and 8 o'clock P. M., and found the said Cowan in bed, suffering from general nervous prostration, and that in the opinion of witness said Cowan was not in a condition to be present at this trial on this day; that witness did not think Cowan could possibly attend court as a witness on this day; that said Cowan ' is worn out from an excessively hard service in his profession '; that said Cowan had to go night and day for two or three weeks, and that he had 15 or 20 patients scattered up and down the railroad, some of them living several miles from a depot, which patients were suffering from injuries received upon the railroad; that said Cowan's heart is fast, and that he complains of severe headache and pains about the base of the brain. ·

" And on cross-examination the witness said he was a surgeon for the defendant company, but that he had not called to see the said Cowan at the direction or by the request of the defendant, but, being in the neighborhood where Cowan resided, on Sunday evening, he called to see him in a friendly way, to enquire after his condition.

" This being all the evidence, the plaintiff opposed a continuance, and the court refused to continue the case and required the defendant to go to trial; to which ruling of the court the defendant, by its counsel, excepted."

*Walker & Caldwell* and *J. E. Moore*, for plaintiff in error.

*J. C. Wysor*, *Ford & Ford*, and *T. W. Morton*, for defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by the defendant in error on the 18th of June, 1892,

while traveling as mail agent and postal clerk on one of the passenger trains of the Norfolk and Western Railroad Company. The injuries complained of were received in a collision between a passenger train going southwest, and a train of freight cars moving northeast, which occurred near New River station, in the county of Pulaski, Va. The accident was the result of gross negligence in the conductor of the passenger train, in failing to obey an order to wait at New River station for the freight train with which he collided.

This suit was brought in the Circuit Court of Pulaski, and resulted, on the 8th day of August, 1893, in a verdict for the plaintiff for $7,000. The court overruled a motion for a new trial, and entered judgment upon the verdict.

It is established by the evidence that the plaintiff was an employee of the Federal Government, and was on the passenger train in the legitimate discharge of his duty as mail agent and postal clerk, under some contract between the Government and the defendant company as to carrying the United States mail.

The relation the plaintiff bore to the railroad company, as a common carrier, imposed upon the defendant company the same degree of care for the plaintiff that it was bound to exercise toward every passenger upon its train. The plaintiff was in no sense an employee of the defendant company, and can only be treated as a passenger. The negligence of the company is not denied, and we do not understand the plaintiff's right of recovery to be seriously controverted.

The first error assigned is the refusal of the Circuit Court to sustain the demurrer to the declaration. No reason is suggested in support of this assignment, and the court, perceiving no ground of objection to the declaration, is of opinion that the demurrer was properly overruled.

The second assignment of error is the refusal of the Circuit Court to continue the case, on the motion of the defend-

ant company, on the ground of the absence of a material
witness.

The court in which a trial takes place is in a position to
determine, better than any one else can do, the sufficiency of
grounds relied on for a continuance; hence it is that an ap-
pellate court does not interfere, unless the judgment of the
court below, on such a motion, is *plainly erroneous*. It has
been repeatedly held by this court that a motion for a con-
tinuance is addressed to the sound discretion of the court,
under all the circumstances of the case; and, though an
appellate court will supervise the action of the lower court
on such a motion, it will not reverse a judgment on that
ground, unless *plainly erroneous*. *Hewitt's Case*, 17 Gratt.
627; *Harman* v. *Howe*, 27 Gratt. 676; *Rousell's Case*, 28
Gratt. 930; *Walton's Case*, 32 Gratt. 855; *Bland and Giles
County Judge Case*, 33 Gratt. 443; *Keesee, Clark et als.* v.
*Border Grange Bank*, 77 Va. 129, and *Mister's Case*, 79
Va. 5.

In the case at bar the absent witness was an employee of
the defendant company, living within eight or ten miles of
the court-house where the trial took place. He was not
summoned in the mode prescribed by law, by a *subpœna*
placed in the hands of the sheriff to be served, but the plain-
tiff in error undertook the responsibility of summoning the
witness and having him present at the trial. After a careful
examination of all the facts and circumstances relating to
this assignment of error, we have reached the conclusion that
the action of the Circuit Court in overruling the motion for
a continuance was not so clearly improper, or plainly erro-
neous, as to justify this court in setting aside the judgment
on that ground.

The third assignment of error is as follows: " Because of
the erroneous rulings of the court below, as set out in Bill of
Exceptions No. 3."

Bill of Exceptions No. 3 covers 124 pages of evidence, an examination of which shows that, in the progress of the trial, numerous points were saved both by the plaintiff and defend-ant as to the propriety of certain questions, and the admis-sibility of the evidence contained in certain answers. The bill of exceptions does not specify which rulings of the court upon these numerous points are relied on as erroneous.

The failure to take a bill of exceptions alleging errors com-mitted by the court, in the admission or rejection of evidence, is treated in the appellate court as a waiver or abandonment of those objections.

When exception is taken to the admission or exclusion of evidence, the bill must be so framed as to point out the par-ticular error complained of, clearly and distinctly; other-wise the exception will be unavailing. Judge Marshall, in delivering the opinion of the court, in *Scott* v. *Loyd*, 9 Peters 418, 442, says: " Although the plaintiff's counsel objected to the question, and said that he excepted to the opinion of the court, no exception is actually prayed by the party and signed by the judge. This court cannot consider the excep-tion as actually taken, and must suppose it was abandoned."

This decision has been quoted with approval by this court in *Fry* v. *Leslie*, 87 Va. 269, 275, and *Trumbo's Adm'r* v. *City Street-Car Co.*, 89 Va. 780, 781, and perhaps in other cases.

In the case of *Holleran* v. *Meisel*, lately decided by this court, (91 Va., 143, 145,) Judge Riely, in delivering the opinion of the court, says: " It is the office of a bill of exceptions to set forth a specific and definite allegation of error, and so much of the evidence as is necessary to a clear apprehension of the propriety or impropriety of the ruling made by the court, and if it fails to do this the exception will prove unavailing." It may now be regarded as a settled rule of practice in this State that in order to have the benefit in an

appellate court of exceptions taken, in the progress of a trial, to the ruling of the court upon a motion to reject or admit evidence, it is necessary that a bill of exceptions should be asked for, and signed by the judge, clearly and distinctly pointing out each erroneous ruling complained of; otherwise the objection taken will be regarded as abandoned.

It is true there may be more than one exception embraced in one bill, thus making it a bill of exceptions, as was held in *Brown* v. *Hall*, 85 Va. 146 ; but where this is done each separate exception embraced in such bill must set forth clearly and distinctly the ground of objection relied on, so that there will be no confusion with others therein contained.

In the case at bar the bill of exceptions under consideration is a single bill of exception, setting forth all the evidence introduced on the trial, taken upon the refusal of the court to set aside the verdict and grant a new trial. It does not conform to the rule of practice already laid down, and, therefore, the numerous objections made to the admission and rejection of evidence at the time it was taken must be regarded by this court as abandoned. It is proper, however, to say that we have considered all such objections, and are of the opinion that the points saved in regard thereto would have been unavailing if said bill of exceptions had been properly taken.

It is further assigned as error that the verdict of the jury for $7,000 is excessive. The law as to how far courts will interfere with the verdicts of juries is very well settled. The question to be considered is not whether the court, if acting in the place of the jury, would have given more or less than the amount of the verdict, but whether the damage awarded by the jury is so large or so small as to indicate that the jury has acted under the impulse of some undue motive, or some gross error or misconception of the subject. Where there is no legal measure of damage, the court will ordinarily leave

the question of amount to the sound discretion of the jury.

Judge Daniel, speaking for this court, in the case of *Farish & Co.* v. *Riegle*, 11 Gratt. 697, 722, where the action was for injuries sustained by the upsetting of a stage-coach, and the jury gave $9,000 damages, says: "There is no rule of law fixing the measure of damages in such a case, and it cannot be reached by any process of computation. In cases of the kind the judgment of the jury must govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case"; citing *Tinney* v. *Ashley*, 16 Pick. 547.

Applying these well-settled principles to this case, we cannot undertake to say that the damages allowed by the jury are unreasonable.

Another assignment of error is that counsel for the plaintiff, in his closing argument, used improper and illegal arguments to the jury, calculated to improperly influence their verdict.

The language objected to is not in the record. The certificate shows that no objection was made to the court during the argument complained of; that objection was not made on this account until after the verdict of the jury, and until after the motion was made for a new trial and overruled; that then the objection was made for the first time, as ground in support of a second motion to set aside the verdict and grant a new trial.

It is clear that this objection was not made in time to be availing. It comes too late after verdict, if the court can see that under all the circumstances a proper verdict has been rendered.

In the case of *Hiram Price* v. *Commonwealth*, 77 Va. 393, where the remarks complained of were prohibited by the statute, this court held that where, in such case, accused does not testify, it is improper for the prosecuting attorney

to comment on that fact.   But, if exception is not taken thereto till after verdict, it is too late, unless under all the circumstances the court can see that a proper verdict has been rendered, and the accused not injured by the comment.

The several assignments of error already considered consti_ tute the grounds upon which the plaintiff in error based its motion for a new trial.   It follows from what has been said that this motion was properly overruled.

Upon the whole case, and for the reasons given, we are of opinion that the judgment must be affirmed.

*Affirmed.*