# Staunton.

## F. A. RAUCH & COMPANY v. GRAHAM MANUFACTURING CORPORATION.

### September 23, 1926.

1. SALES—*Set-off and Recoupment—Verdict not Showing Items of Set-off Allowed and Items Disallowed.*—In an action by sellers against buyer, where the buyer pleads numerous items of set-off, a verdict finding a lump sum in favor of the defendant on its set-off is open to objection. Under proper practice the verdict should show the amount allowed on each item of set-off.

2. APPEAL AND ERROR—*Case as on a Demurrer to the Evidence—Set-off and Recoupment.*—In the instant case, an action by a vendor of personal property against the buyer, the petition for a writ of error by plaintiffs assigned as error the allowance by the jury to the defendant of a number of contested items of set-off. In considering these contested items of set-off the plaintiffs stand in the Supreme Court of Appeals practically as on a demurrer to the evidence, admitting the truth of all the testimony of the defendant and of all inferences therefrom that a jury might fairly draw, and waiving all of their parol evidence in conflict with that of the defendant, and all inferences therefrom except those which necessarily flow therefrom.

3. APPEAL AND ERROR—*Assignment of Error—Conflicting Evidence—Burden of Proof and Preponderance of Evidence—Set-off and Recoupment.*—In the instant case, an action by sellers against buyer, the buyer pleaded a number of items of set-off which were allowed by the jury, and the allowance of which plaintiffs assigned as error. In their brief plaintiffs in error contended that on the issues of the set-offs the buyer was the plaintiff and the burden was on it to show, by preponderance of evidence, that it was entitled to each item of set-off and that the evidence of the buyer was not sufficient as against the evidence for the sellers to sustain this issue and that the trial court should have set aside the verdict of the jury in favor of the buyer upon these items of set-off.

   *Held:* That there was no merit in this contention as the case in the appellate court stood as on a demurrer to the evidence.

4. DEMURRER TO THE EVIDENCE—*Appeal and Error—Preponderance of Evidence—Credibility of Witnesses.*—On a demurrer to the evidence the Supreme Court of Appeals has nothing to do with the preponderance of the evidence, or the credibility of the witnesses.

5. APPEAL AND ERROR—*Conflict of Evidence.*—Where there is a direct conflict in the evidence the verdict of the jury cannot be disturbed.

6. APPEAL AND ERROR—*Evidence Sufficient to Support Verdict—Where Appellate Court Might Have Come to a Different Conclusion if on the Jury.*—Although the evidence in support of a verdict is far from satisfactory, and the appellate court if on the jury might have found differently, yet, on appeal it is limited to the inquiry whether or not there was evidence sufficient to support the verdict.

7. APPEAL AND ERROR—*Assignment of Error—Duties of Plaintiff in Error.*—It is the duty of a plaintiff in error to show to the Supreme Court of Appeals the errors committed by the trial court and the extent thereof.

8. APPEAL AND ERROR—*Verdict Contrary to the Evidence—Rule on Appeal.*—Unless the verdict is plainly against the evidence, or is without evidence to support it, the Supreme Court of Appeals cannot sustain a motion to set it aside on the ground that it is contrary to the evidence.

9. APPEAL AND ERROR—*Bill or Certificate of Exceptions—Sufficiency—Admissibility of Evidence.*—A certificate of exceptions was a mere extract from the stenographer's report of the testimony, and contained twelve rulings on evidence, each as follows: "Objection. Overruled. Exception." The Supreme Court of Appeals will not assume the burden of undertaking to ascertain the ground of such objections. If not obvious, the ground must be set out in the certificate or bill of exceptions.

10. SALES—*Parol Evidence—Description of Subject of Sale—Case at Bar.*—In the instant case, an action by sellers against a buyer, the written memorandum of the sale described the machinery sold as "machinery seen by the buyer of defendant."

    *Held:* That, as it was impossible to tell what machinery was "seen" by the buyer except from parol evidence, parol evidence was properly admitted.

11. APPEAL AND ERROR—*Harmless Error—Error in an Instruction—No Recovery Under the Instruction.*—In an action by sellers against a buyer the trial court erred in giving an instruction as to warranty where the written contract of sale contained no warranty, but the error was harmless as no recovery was allowed the defendant in error under that instruction.

Error to a judgment of the Circuit Court of Tazewell county, in a proceeding by motion for a judgment for money to a judgment for less than the plaintiffs' claim that assigned error.

*Reversed.*

The opinion states the case.

*J. Powell Royall,* for the plaintiffs in error.

*A. C. Buchanan* and *Sexton & Rober:s,* for the defend-ant in error.

Burks, J., delivered the opinion of the court.

This was an action to recover on notes given for the deferred payments on certain felting machinery sold by the plaintiffs to the defendant. The defendant filed a special plea of recoupment under section 6145 of the Code, alleging fraud in the procurement of the contract and filed a list of set-offs. On the former hearing we decided that there was no fraud in the procurement of the contract, and entered the following order:

"The judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded to the circuit court with directions to consider the plaintiffs' claim as established for the sum of $2,600.00, with legal interest from April 28, 1923 (the date of the former verdict), and to strike from the defendant's list of set-offs the items of $2,600.00, $300.00 and $128.00 hereinbefore mentioned, and to empanel a jury to determine what credit, if any, the defendant in error is entitled to receive by reason of the other items of set-off mentioned in the list filed." *Rauch* v. *Graham Mfg. Corp.,* 140 Va. 445, 124 S. E. 427, 126 S. E. 2.

At the second trial the list of set-offs was corrected as ordered, and the parties went to trial on the question of the set-offs, and the jury found in favor of the defendant, on account of its set-offs, the sum of $2,257.58. The corrected list of set-offs was as follows:

1919.

Nov. 26.   One lot of ticking claimed to have been shipped by the plaintiffs, for which no order was given by the defendant, and which was paid for inadvertently, but which was never received by the defendant_____ $565.60

Aug. 20.   Freight on ticking shipped from Chicago not ordered by the defendant and returned to the plaintiffs_____ 21.43

Sept. 25.   65½ yards D. Sp. ticking, shipped from Norton without order and too badly damaged to be used, at 25c per yard_____ 16.38

Sept. 25.   64 yards Beverly ticking at 47½c per yard, shipped from Norton without order and never received, but paid for_____ 30.40

Sept. 16.   Freight on excelsior picker shipped in lieu of one purchased with the felt machine, worthless and never used by the defendant_____ 8.37

Dec. 29.   Cost of repairs and expenses of repairs on felt machine. 330.96
Picker bought as part of felt machine but sold by the plaintiffs to someone else and not delivered to the defendant_____ 600.00

Dec. 29.   Miscellaneous small repairs purchased locally_____ 50.00

Dec. 30.   Collect telegram from F. A. Rauch & Co_____ .70
Collect night letter from F. A. Rauch & Co_____ .70

1921.

Jan. 31.   To day letter from F. A. Rauch & Co_____ 1.00
Feb.  3.   To collect telegram from F. A. Rauch & Co_____ 1.70
Feb.  9.   To collect day letter from F. A. Rauch & Co_____ 1.00
Feb. 23.   To collect d. letter from F. A. Rauch & Co_____ 1.00
Feb. 26.   To collect d. letter from F. A. Rauch & Co_____ .70
Mar. 16.   To 300 pounds felt at 12c_____ 36.00
To 734 pounds felt at 12c_____ 88.08
Apr. 30.   To 4,688 pounds felt at 12c_____ 562.56
May 14.   To 1,622 pounds felt at 12c_____ 194.64
June  3.   To collect day letter from F. A. Rauch & Co_____ 1.00
Minimum loss to business, two months time of manager at $250.00_____ 500.00

The petition for the writ of error assigns as error the allowance of the following items of set-off: $565.60 for one lot of ticking, "for which no order was given by the defendant, and which was paid for inadvertently, but which was never received by the defendant;" $330.96 costs of repair and expenses of repairs on felt

machine; $600.00 for picker purchased by the defendant, but not delivered; $50.00 miscellaneous small repairs purchased locally; $500.00 loss of time of manager.

[1] The verdict on the last trial is open to the same objection that was made to the verdict on the first trial. It finds a lump sum in favor of the defendant on its set-offs, without showing which items were disallowed and which were allowed, in whole or in part. Under proper practice, in a case of this kind, the verdict should show the amount allowed on each item of set-off. This litigation, however, has already continued too long, and we must do the best we can with the record before us.

The defendant's set-offs amounted to $3,010.42. The jury allowed only $2,257.58, and of this sum the plaintiffs admit there is no controversy over items amounting to $957.29, less freight $56.26, leaving $902.03.

[2] In considering the contested items of set-off, it must be borne in mind that the plaintiffs stand in this court practically as on a demurrer to the evidence, admitting the truth of all the testimony of the defendant and of all inferences therefrom that a jury might fairly draw, and waiving all of their parol evidence in conflict with that of the defendant, and all inferences therefrom except those which necessarily flow therefrom.

[3] In the reply brief of the plaintiffs in error it is said: "The court will bear in mind that the defendant in error was the plaintiff in this issue, and the burden was on it to show, by a preponderance of evidence, that they were entitled to this, as well as other items of offset, and it is respectfully submitted that the testimony of the witnesses, Longworth and Thomas, was not sufficient, as against the direct and competent

evidence of Rauch, supported by documentary testimony, and the admissions and conduct of the defendant, and the court should have set aside the verdict of the jury for the reason that the evidence was not sufficient to support the verdict."

[4] The same argument is elsewhere repeated in that brief; but the argument is not sound. On a demurrer to the evidence, this court has nothing to do with the preponderance of the evidence, or the credibility of the witnesses. *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15; *Norfolk, &c., Co.* v. *Thayer Co.*, 137 Va. 294, 119 S. E. 107.

[5] One item of the set-offs was a picker alleged to have been sold as a part of the machinery purchased but not delivered, $600.00. The plaintiffs denied selling the picker to the defendant. The only evidence offered by the plaintiffs on the subject was the testimony of one of the plaintiffs, who denied the sale. On the other hand the testimony of R. L. Longworth, agent of the defendant, was direct and positive to the effect that the picker constituted a part of the machinery purchased. The evidence was in direct conflict and the verdict of the jury in favor of the defendant cannot be disturbed. There was also abundant evidence to support the verdict of the jury fixing the value of the picker at $600.00. Not only did Longworth fix this value, but Thomas did also. He was familiar with the price of pickers and fixed the price of a second-hand picker of the kind described at $600.00. Metcalf also, from the description given him of the picker, valued it at $600.00. This was sufficient to support the verdict of the jury.

[6] Another item of set-off was $565.60 for goods shipped by the plaintiffs to the defendant, but not ordered, and never received, and "paid for inadvertent-

ly." The evidence on the subject is far from satisfactory. If on the jury, we might not have allowed credit for this item, but that is not the question we have to answer. We are limited to the inquiry, whether or not there was evidence sufficient to support the verdict.

Longworth, a witness for the defendant, with no interest in the controversy, testified that the defendant paid the plaintiffs $565.00 for a bunch of ticking which the defendant never ordered and never got, thinking the defendant would get credit for it later, but never did. The defendant also produced several letters to the plaintiffs, written in 1920, stating that the shipment had not been received. Longworth also testified that there were two shipments of the same quantity of goods, one of which was received and the other not. Thomas, who became bookkeeper of the defendant at a later date, also testified that this item appeared on the books of the defendant under date of November 26, 1919, the date given in the list of set-offs; that merely for the purpose of tracing the item, but with no intention or expectation of collecting it, he took it up with the N. & W. Ry. Co., and found out that the shipment was never delivered to the defendant. There is much other evidence on the subject, and Rauch in his testimony admitted that there were several other shipments by the plaintiffs to the defendant about which there is no controversy here, which were not ordered by the defendant. Rauch contradicts the statement of Longworth that the goods were not received by the defendant and offers written evidence tending to support his testimony, but this simply produces a conflict of evidence with which we are not concerned on this writ of error.

An effort is also made to show that defendant is

estopped to assert a claim for this item because it made an ineffectual effort to collect it of the railroad company, but the evidence on the subject is too doubtful and unsatisfactory to create such an estoppel.

The list of set-offs also contains an item of $330.96. In the former opinion this was said of that item: "The machinery was damaged in transit to the extent of $330.96. Under the terms of the contract the plaintiffs were not liable for this item as there is no evidence that they were in any way responsible for safe packing or securing the machinery on the car." But on the rehearing it was said: "It is also claimed that the $181.86 mentioned in the opinion as damages to machinery specifically allowed by the verdict of the jury constitutes a part of the item of $330.96 mentioned in the opinion as damages to machinery in transit.

"In order to allow the jury to pass on these two items as well as 'the other items of set-off mentioned,' the former opinion and judgment will be modified to this extent: *    *" Then follows the judgment of the court hereinbefore quoted.

This item was, therefore, among the items referred back to the jury. On the last trial it developed that this item was composed of the following component parts: "A. 4 wood beams at $2.50, $10.00; sheet metal work, $20.00; repair parts, Geo. S. Harwood Co., $101.70; salary and expenses of mechanic from Chicago, $181.86; reclothing Doffer (Smith & Furbush Co.), $17.40.    Total, $330.96."

Longworth, a witness for the defendant, testified on this subject as follows:

"Q. Among the items on the list is salary and expenses of mechanic from Chicago, $181.86. Please explain to the jury what that was?

"A. That was the mechanic who came down here

to set the machine up, that Mr. Rauch sent down here.

"Q. For what purpose?

"A. For setting up and installing the machine.

"Q. Had Mr. Rauch promised to do that?

"A. It was understood that he was to set the machine up; was to see that it was set up.  He was to send a man down here to do it, said he would probably send Funk, but after Funk wouldn't have anything to do with it—he wrote me himself that Funk wouldn't answer his letters, and he sent Wood instead.

"Q. Was that understanding and agreement made at or before the making of the contract?

"A. At the time.

\*          \*          \*          \*          \*          \*          \*

"Q. Did the defendant company, I mean the Graham Manufacturing Company, pay this amount to this man?

"A. Yes, sir.

"Q. And has it been repaid to the Graham Manufacturing Corporation by this plaintiff?

"A. It hadn't up.to the time I left there; no, sir."

He also testified as follows:

"Q. What was said about his sending it down and installing it, if anything?

"A. Said he had a man he could send down with it, a fellow that knew all about the machine.  That was understood.  I didn't know what it was, couldn't possibly have set it up on my floors, and didn't have anybody to do it.

"Q. And he told you if you bought it he would send a man down to put it in operation?

"A. Yes, sir."

On cross-examination he admitted that possibly twenty-five per cent. of this amount had been collected from the Norfolk and Western Railroad.

Thomas, another witness for the defendant, testified that the item of $330.96 was the total of repairs and parts and was set out on the books of the defendant as of December 29, 1919. While he was not with the defendant until January 2, 1922, and made part of the entries himself, he explains that the books of the defendant had not at that time been completed. While Rauch testified that the plaintiffs were not liable for this charge and is in part corroborated by other evidence, the jury had the right to accept as true the testimony offered by the defendant. Upon this evidence the jury might have allowed the defendant three-fourths of $330.96, or $248.22, even though the evidence was not convincing.

If, as seems to be true, the jury allowed credit for the items $565.60, $600.00 and $248.22, we cannot disturb their verdict in this respect. But the aggregate of these figures must be reduced by $296.33, which the defendant credited on the original list of set-offs, and which is practically admitted now to be a proper credit.

The evidence does not support the claim of the defendant that the item of $50.00 was for repairs for which the plaintiffs are responsible.

The item of $500.00 for loss of services of manager for two months appears to be an after-thought, and is not supported by the evidence and should not have been allowed.

The credit allowed the defendant on account of set-offs is excessive, as appears by the following statement:

| | | |
|---|---:|---:|
| Amount of set-offs allowed by the verdict_____ | | $2,257 58 |
| Undisputed items_____$ | 902 03 | |
| Goods paid for but not delivered_____ | 565 60 | |
| Picker_____ | 600 00 | |
| Repairs and setting up machine_____ | 248 22 | |
| | $2,315 65 | |
| Less credit_____ | 296 33 | 2,019 52 |
| Amount of excess in verdict_____ | | $ 238 06 |

[7, 8] It is the duty of a plaintiff in error to show to this court the errors committed by the trial court and the extent thereof, but in the instant case that has not been done.    Counsel for the plaintiffs in error has made a very strong and forcible argument to show that the verdict should have been different from what it was, but has not pointed out how, under the rule prevailing in this court, we could change the result. He correctly says that the burden of proof was on the defendant to prove every item of its set-offs, and he argues that the defendant has not sustained this burden, and that the preponderance of evidence was decidedly in favor of the plaintiffs, but he overlooked the rule that this court has nothing to do with the mere preponderance of the evidence or the credibility of the witnesses.    Unless the verdict is plainly against the evidence, or is without evidence to support it, this court cannot sustain a motion to set it aside on the ground that it is contrary to the evidence.    *Forbes & Co.* v. *Southern Oil Co., supra.*

[9] Sundry exceptions were taken by the plaintiffs in error to rulings of the trial court on the admissibility of evidence, but in the main they are not such as will be considered by this court.    For instance, certificate of exception No. 2 is a mere extract from the stenographer's report of the testimony, and contains twelve rulings on evidence, each as follows:  "Objection. Overruled.    Exception."    This court will not assume the burden of undertaking to ascertain the ground of such objections.    If not obvious, the ground must be set out in the certificate or bill of exception.    *Norfolk & Western R. Co.* v. *Shott,* 92 Va. 34; *Robertson* v. *Atlantic, &c., R. Co.,* 129 Va. 494; *Burgess* v. *Comth.,* 136 Va. 697; *Hinkel* v. *Comth.,* 137 Va. 791.

In the petition for the writ of error, those rulings are dealt with as follows:

"Plaintiffs excepted to the ruling of the court in allowing the said evidence as to the sale of the machinery to go to the jury, as shown by plaintiff's certificate of exception No. 2, No. 3, No. 4, No. 5, No. 6, No. 7, No. 8, No. 9, No. 10, No. 11 and No. 12 (R. p. 242-268), as to the witness R. L. Longworth introduced by the defendant, as to the evidence complained of. The witnesses, K. B. Thomas, J. T. Lampert and O. A. Metcalf, introduced by the defendant, were also permitted by the court to testify as to the machinery, and the plaintiff's certificates of exception No. 13, No. 14, No. 15, No. 16, No. 17, No. 18, No. 19 and No. 20 (R. p. 270-288) relate to the testimony given by said witnesses, Thomas, Lampert and Metcalf, complained of."

[10] It is probable that counsel for the plaintiffs in error intended his numerous exceptions to apply throughout to one and the same objection pointed out in assignment of error No. 3, to-wit, allowing testimony to be introduced "as to the contract relating to the sale of the machinery itself." If so, the exception was not well taken, because the written memorandum of the sale describes the machinery sold as "machinery seen by R. L. Longworth, the buyer for said firm." It was impossible to tell what machinery was "seen by Mr. R. L. Longworth" except from parol evidence, and it was properly admitted. When admitted, the parties were in direct conflict. If the exceptions were intended to be more extensive than this, it is not made to appear from the certificates.

There was evidence sufficient to support instructions 1, 2 and 3, given for the defendant in error, and they correctly state the law. The trial court committed no error in giving them.

[11] The trial court erred in giving instruction No. 4

for the defendant in error, as the written contract of sale contained no warranty as to the capacity of the machine, but the error was harmless, as no recovery was allowed the defendant in error under that instruction.

The trial court committed no error in refusing plaintiff's instruction No. 7 relating to estoppel as to item for $565.60. We have pointed out in discussing this item our reasons therefor. Furthermore, according to the testimony of Thomas, the claim was filed as a mere tracer and with no view or expectation of recovering thereon.

The refusal of the trial court to grant plaintiff's instruction No. 8 need not be discussed, as we have hereinbefore allowed the plaintiff credit for the item of $296.33 referred to in that instruction.

Refusal to give plaintiff's instruction No. 9 was not error as the subject was sufficiently covered by other instructions given.

We have carefully examined the plaintiff's instructions modified by the trial court, and, in modified form, given as plaintiff's instructions 2, 4 and 6. The modifications were proper and were not prejudicial to the plaintiffs.

For the errors hereinbefore pointed out, the judgment of the trial court will be reversed, and the verdict of the jury set aside, and an order will be entered in this court directing that the judgment entered by the trial court in favor of the plaintiffs for $2,600 and interest be credited by the sum of $2,019.52, as of May 13, 1925, instead of by $2,257.58 ascertained by the verdict of the jury, and that the defendant in error recover its costs in this court.

*Reversed.*