## Staunton.

### WILLARD BOGGS v. COMMONWEALTH.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*D. F. Kennedy* and *A. C. Anderson*, for the plaintiff in error.

*John R. Saunders, Attorney-General, and Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

Willard Boggs was indicted in the Circuit Court of Wise county for the murder of Leonard Bolling, was found guilty of assault and battery by a jury, and his punishment fixed at confinement in jail for six months and a fine of $200.00. Judgment was pronounced by the court, carrying into effect the verdict of the jury. To this judgment of the circuit court a writ of error was awarded by one of the judges of this court.

The only assignment of error is that the trial court erred in admitting in evidence certain alleged dying statements, made by the deceased, that the accused had beaten him with a chair and kicked him.

We are met at the threshold of this case with a motion to dismiss this writ of error as improvidently

awarded. The basis of the motion of the Attorney General is that the evidence alleged to be inadmissible and illegal is not properly a part of the record.

The motion of the Commonwealth must be granted. The evidence is not identified by the trial court. The only attempt at identification is found in four skeleton bills of exceptions which are identical in form with the exception of the names of the witnesses. Omitting the style of the case, they read as follows:

"Be it remembered and the court doth certify that upon the trial in the above styled case the following questions were propounded and the answers obtained from the witness * * * and that the defendant by counsel objected to what the witness stated about Leonard Bolling's so called dying declaration but that the court overruled said objections and permitted the witness to state about the same. The defendant by counsel excepted.

"Given under my hand this the 3rd day of October, 1928.

"H. A. W. Skeen,
"In the Circuit Court of Wise county."

It is true that following each bill of exceptions the clerk has copied into the record what purports to be the examination of the four witnesses. Whether the purported evidence copied by the clerk is the evidence objected to is not apparent from an inspection of the record. The law is well settled in this State that the mere fact that the clerk of the trial court copies certain alleged evidence into the record cannot make it a part thereof, unless the evidence is properly identified by the trial court and made a part of the record by bill of exceptions.

In *Reynolds* v. *Commonwealth*, 135 Va. 722, 115 S. E. 514, Chief Justice Prentis said: "The writ of error

must be dismissed in this case for a perfectly obvious reason. The statement of the evidence appearing in the record is not identified by the judge of the trial court. He signed a skeleton bill of exceptions in which this is certified: '* * * That the Commonwealth, to sustain the issue on her part, introduced. (Here insert the Commonwealth's evidence). And the defendant, to sustain the issue on his part, introduced. (Here insert defendant's evidence) * * *;' but, as indicated, the evidence which was thus to be inserted is in no way authenticated by the trial judge. That this is clearly insufficient has long been settled in this court. *Blackwood Coal Co.* v. *James*, 107 Va. 658, 60 S. E. 90."

In *Dove Co.* v. *New River Coal Co.*, 150 Va. 828, 143 S. E. 317, 327, we read: "The court deems it proper to call attention to the following condition of the record in this case. The proceedings and evidence in the trial, appearing in the printed record from page eighty-nine to page 303, were manifestly taken from the stenographer's transcript. It is not in any way identified nor authenticated by the trial judge. Bill of exceptions No. 11 merely refers to "the following as the evidence," but there is nothing to indicate what is the evidence. Such a reference does not comply with the requirement held requisite in *Turner* v. *Smith*, 143 Va. 206, 129 S. E. 367; *Blackwood Coal Company* v. *James' Adm'r*, 107 Va. 656, 60 S. E. 90, and *Pereira* v. *Moon*, 146 Va. 225, 135 S. E. 672."

Even though the evidence had been in some way identified by the trial court, there is still another reason why we are precluded from passing upon this assignment of error. An examination of the purported stenographic report of the evidence shows that it is devoid of grounds of objections made in the trial

court. Under Rule 22, which has been frequently adverted to in the decisions of this court, it must appear that the objections urged in the trial court to the admissibility of evidence are substantially the same objections which are relied upon in this court.

All that the record discloses is that when the evidence complained of was offered by the Commonwealth, counsel for the accused entered a general objection to its admissibility. Rule 22 requires that all objections to the admissibility of evidence requiring a ruling of the trial court shall state with reasonable certainty the grounds of such objection. This language is explicit, and, unless good cause is shown why the objections were not made in the trial court, this court will not consider the objections here relied upon, unless the ends of justice in the particular case demand it.

In *Rauch & Co.* v. *Graham, etc.*, 145 Va. 691, 134 S. E. 692, 695, Judge Burks, delivering the opinion of the court, said: "Sundry exceptions were taken by the plaintiffs in error to rulings of the trial court on the admissibility of evidence, but in the main they are not such as will be considered by this court. For instance, certificate of exception No. 2 is a mere extract from the stenographer's report of the testimony, and contains twelve rulings on evidence, each as follows: 'Objection. Overruled. Exception.' This court will not assume the burden of undertaking to ascertain the ground of such objections. If not obvious, the ground must be set out in the certificate or bill of exception. *Norfolk & Western R. Co.* v. *Shott*, 92 Va. 34, 22 S. E. 811; *Robertson* v. *Atlantic, etc., R. Co.*, 129 Va. 494, 106 S. E. 521; *Burgess* v. *Commonwealth*, 136 Va. 697, 118 S. E. 273; *Hinkel* v. *Commonwealth*, 137 Va. 791, 119 S. E. 53."

In the instant case the record clearly discloses

that no injustice has been done the accused. In the exercise of its power, the jury found the accused guilty of assault and battery when it would have been warranted, in the exercise of its right under the evidence adduced by the Commonwealth, in finding him guilty of murder in the first degree. A brief statement of the facts, in our opinion, supports this conclusion.

It appears that the original trouble between the accused and the deceased arose out of a statement made by the deceased to certain moonshiners that the accused was preparing to tell the officers where their still was located. The operators of the still went to the accused and inquired why he proposed to do this. The accused denied having made the statement and demanded that he be confronted with the deceased. Thereupon, Monroe Church, Fred Church and Charley Church, who were interested in the still, went to the deceased and brought him to the place where the accused was. The deceased was at that time intoxicated, and, on being questioned by the accused, insisted that the accused had told him that he was going to denounce the Churches for operating the still.

Monroe Church testified that the accused said to the deceased: "If you were not drunk, I would pick up a rock and beat your head into this sand." Prior to the arrival of the deceased, the accused stated to Monroe Church that if the deceased said he had made the statements complained of: "I will pick up a chair and beat him to death; he is too big for me, I could not fight him fair." Charley Church testified that during the conversation between the accused and the deceased, the accused said: "Don't you tell me that no more, if you do I will beat your head in the sand," and later said to the deceased that he would let him alone until the next morning because he was drunk. Charley

Church also testified that the accused further stated to deceased: "If you say I said it, I will take a chair and beat you to death." Fred Church testified to the same effect.

The accused testified that on the following morning he went to the place where the deceased was staying and a fight ensued between him and the deceased. It is true that he testified that the deceased was the aggressor, but he admits that he struck the deceased and knocked him down.

The Commonwealth proved by Caleb Church that shortly after the fight the accused made the statement in his presence that this was one of the times he had "made his words true," and that the accused further stated: "I told him yesterday evening if he told me this morning what he said yesterday evening I would take a chair and beat his . . . . . . . . . . . . brains out, and I have made my words true." About half past nine o'clock on the same morning the accused told Samp Hampton that he had had "a racket" with the deceased. This witness testified further: "He said him and Bolling had had a racket and I done just what I said I was going to. If he gets away from there any ways quick, he will have to be carried away."

The accused told Volley Hampton that it was possible that the deceased had intended to "give the still away" and lay it on him, the accused, and then said: "If he does, the boys will have plenty of time to get away before he gets out of here, if he gets out any ways soon, he will be carried out." The accused further stated to this witness that he hated to have any trouble on account of his people, "but if a fellow told a lie on him, he did like to peck on him." The accused also stated in the presence of Mrs. Samp Hampton that he had had a little scrap with the de-

ceased and that he, the accused, had "done just what he said he was going to do, and he guessed if he got away from there any ways soon he would be carried away."

Wade Hampton, who saw the deceased the day after the fight, testified that there was a bruise on the deceased's arm and a large wound or cut on his head. At that time the deceased was spitting blood. The doctor who made the examination of the deceased's body, about twenty-four or thirty hours after his death, testified that the body was in such a state of decomposition and so discolored he could not tell anything about any external wounds. From the information he obtained, however, he was of the opinion that the deceased died of a hemorrhage of the stomach.

The accused testified that the deceased had told him that he had been hurt in a mine; that, when he went to see him, the deceased, on the morning of the fight, they quarrelled about the statements made to the distillers by the deceased, and that the deceased struck at him first. His wife testified, on direct examination, that her husband stated on the day before the fight, with reference to the deceased, that "he would talk to his head, he said when he got sober he would give him a whipping."

Varney Hounshell, who arrived at the scene of the fight just after it occurred, testified that he found the accused standing up and the deceased lying on the floor partially propped up. He testified on cross-examination that a chair was overturned on the floor, and that, before he arrived at the scene, he heard sounds like scuffling. He also testified that there was blood on the floor, and that, when he first went there, the deceased tried to raise up but could not do so.

*Writ dismissed.*